FORET, Judge.
The plaintiff, Azemae Hargrave, filed suit against the defendants, Elida Romero, Aides Monteaux, and Lela Romero Mon-teaux, to establish her right to possess a certain tract of land in Vermilion Parish acquired by her as the universal legatee of her deceased husband, Andy Romero. In addition, plaintiff sought cancellation of a surface lease on the property in favor of Elida Romero, for non-payment of rentals. The defendants reconvened, seeking (1) recognition of an act of revocation and credit sale executed by Elida Romero, (2) the nullity of the donation made by Elida Romero, and (3) the recognition of Mrs. Romero as the forced heir of her son, Andy Romero, therefore entitling her to reduction of an excessive donation. The trial court found the donation valid, refused to dissolve the lease, and declined to entertain the claim of forced heirship on the basis of a lack of jurisdiction over that subject matter. The defendants have appealed the judgment of the trial court.
The issues presented on appeal are:
(1) Whether the donor, Elida Romero, is entitled to a revocation of the donation made to Andy Romero based upon the non-performance of a condition allegedly imposed by the donation; and,
(2) Whether Elida Romero is entitled to her forced portion as the surviving parent of her deceased son, Andy Romero.
We affirm the trial court in part and reverse in part.
The defendant, Elida Romero, by act of donation dated September 18, 1973, conveyed to her two surviving children, Lela Romero and Andy Romero, and her grandchild, Jerry L. Romero, the child of a deceased son, three tracts of land, each containing 7.441 acres. The property in question here is designated as:
Lot No. 1-B, containing 7.441 acres, being a portion of Lot 1 of a Survey and Division of the Estate of Meon Romero and Freddie Blanchard, lying and being situated in the Southern portion of the Southwest Quarter of Fractional Section 10, T 12 S, R 4 E, in the First Ward of Vermilion Parish, Louisiana; said lot measuring 1,317.93 feet, on its North line, 245.77 feet on its East line, 1,320.07 feet on its South line, and 245.78 feet on its West line, all in accordance with the distance and directions as shown on Sur *83 vey Plat dated September 10, 1973, made by Joseph E. Schexnaider, Surveyor, which plat is attached to and made a part of the Act of Donation recorded in Donation Book No. 23, Page 379, Entry No. 218571 of the Public Records of Vermilion Parish, Louisiana.
The donor reserved to herself the minerals in the land, in the form of a mineral servitude. On that same day, the donees granted to the donor a lease on the property for the remainder of her lifetime at a yearly rental of $100. This act of lease was not recorded until March 5, 1982. In 1979, Andy Romero died testate, leaving his wife, Azemae Hargrave, all of his separate and community property. In 1980, plaintiff was sent into possession of the decedent’s property by a judgment of possession. On February 8, 1982, Elida Romero was informed by letter from the attorney who handled the succession that the surface lease was cancelled due to non-payment of the rentals. On March 5, 1982, Mrs. Romero filed a revocation of the donation and executed a credit sale of the property to Lela Romero Monteaux and Aides Mon-teaux. The plaintiff subsequently filed this suit.
We agree with the finding of the trial court that the donation was valid in form and that there was no evidence presented that it was a divestiture by the defendant of her entire patrimony. LSA-C.C. Article 1497 and 1536.[1]
The problem is whether the lease executed by the parties was a condition of the donation imposed by the donor under LSA-C.C. Art. 1527, which would entitle the donor to a revocation of the donation.[2]
LSA-C.C. Art. 1533, prior to its amendment in 1974, prohibited a donor from reserving to himself the usufruct on immovable property donated; therefore, we are presuming that the lease was an attempt, by the donees, to create a usufruct in favor of the donor, which she was prohibited from reserving to herself at the time of the donation. All parties in the action testified that the stipulated rentals had never been paid, nor was it intended that they would ever be paid. The plaintiffs property is therefore encumbered by a lease for which no consideration is being received. The donees would have better served the interest of the donor by donating to her a usufruct on the property. Such a usufruct would not be subject to cancellation for a breach of lease terms as is the case here.
The lease is valid on its face, but to remain in effect, its terms must be adhered to. This lease is an act separate and distinct from the act of donation and, in our opinion, not a condition imposed by the act of donation. In order for such a charge or *84 condition to be binding so as to entitle donor to an action for revocation under LSA-C.C. Article 1566,[3] we believe that it must be contained in the act of donation, or otherwise clearly identified with the act of donation by reference, paraph, etc. Since the action under Art. 1566 is not restricted as to against whom it may be brought, as in Art. 1561,[4] anyone acquiring the property would have to be aware of such charge or condition. The effect of this lease is counter-productive to an owner’s right to alienate his interest in property for the highest gain. Surely no prospective purchasers would be interested in acquiring an interest in 7.441 acres in which there were no rights to the minerals, and additionally, no right to use the surface of the land because of a lifetime lease for which no consideration is being paid. If the intent of the acts executed was to convey only naked ownership to the donees, then they should have been more skillfully concocted and drafted.
Because we are of the opinion that the lease would not be a condition validly imposed upon the donation, the defendant, Elida Romero, is not entitled to revoke the donation under Art. 1566, and any subsequent sale of the property is invalid.
FORCED HEIRSHIP
Elida Romero demanded, alternatively, that she be recognized as the forced heir of her deceased son, Andy Romero, and that the excessive donation to Azemae Hargrave be reduced to the disposable portion. It is our conclusion that the trial judge erred in failing to entertain this claim.
LSA-C.C. Art. 1494, prior to its amendment in 1981, read as follows:
“Art. 1494. Disposable portion when parents survive
Art. 1494. Donations inter vivos or mortis causa can not exceed two-thirds of the property, if the disposer, having no children, leave a father, mother, or both.”
Clearly, Mrs. Romero would have been her son’s forced heir at the time of his death and probate of his will, and should be recognized as such. The action to reduce an excessive donation is not an action to annul a probated testament, which would be governed by LSA-C.C.P. Art. 2931.[5] Under LSA-C.C. Art. 1502,[6] the disposal of property, either inter vivos or mortis causa, exceeding the disposable portion is not null, but only reducible to that portion. Mrs. *85 Romero is not seeking here to challenge her son’s last will and testament, but is simply seeking a reduction of the excessive donation to Azemae Hargrave. Such an action may be pursued in a case such as this and is not restricted to the prior probate proceeding. Therefore, the trial judge should proceed in the action for reduction according to the Civil Code articles governing such actions.
Accordingly, the judgment of the trial court upholding the validity of the donation and lease in question and denying an action for revocation is affirmed, but is reversed insofar as it denies Elida Romero her action for reduction of the excessive donation made by Andy Romero to Azemae Har-grave, and is accordingly remanded for further proceedings.
All costs of these proceedings are to be borne one-half by plaintiff-appellee and one-half by defendants-appellants.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

. “Art. 1497. Nullity of donation inter vivos of entire patrimony
A. The donation inter vivos shall in no case divest the donor of all of his property; he must reserve to himself enough for subsistence. If he does not do it, a donation of a movable is null for the whole and a donation of an immovable is null for the whole unless the donee, asw to such immovable, has alienated by onerous title the immovable given to him. Except as provided in paragraph B hereof, if a donee has alienated by onerous title the immovable which has been given to him, the donation of such immovable shall not be declared null on the ground that the donor did not reserve to himself enough for his subsistence; however, the donee is bound to return the value that the immovable had at the time of its donation to the donee.
B. The provisions of this article are hereby made retroactive to any donation inter vivos made prior to September 10, 1982. Any person whose rights are adversely affected under the provisions of this article and whose rights have not prescribed or otherwise been extinguished or barred on September 10, 1982 shall have one year from that date to initiate an action or proceeding to declare null a donation inter vivos as provided herein or be forever barred from exercising such right or cause of action.”
"Art. 1536. Donation of immovables or in-corporeals, form required
An act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity.”

. “Art. 1527. Charges or conditions imposed by donor
The donor may impose on the donee any charges or conditions he pleases, provided they contain nothing contrary to law or good morals.”

. “Art. 1566. Non-fulfillment of potestative conditions; suit to dissolve
But if the conditions be potestative, that is, if the donee is obliged to perform or prevent them, their non-fulfillment does not, of right, operate a dissolution of the donation; it must be sued for and decreed judicially.”

. “Art. 1561. Revocation for ingratitude; prescription, parties
An act * of revocation for cause of ingratitude must be brought within one year from the day of the act of ingratitude, imputed by the donor to the donee, or from the day that the act was made known to the donor.**
The revocation can not be sued for by the donor against the heirs of the donee, nor by the heirs of the donor against the donee; unless in the latter case, the suit was brought by the donor, or he died within the year in which the act of ingratitude was committed."

. “Art. 2931. Annulment of probated testament by direct action; defendants
A probated testament may be annulled only by a direct action brought in the succession proceeding against the legatees, the residuary heir, if any, and the executor, if he has not been discharged. The defendants shall be cited, and the action shall be tried as an ordinary proceeding.”

.“Art. 1502. Reduction of excessive donations
Any disposal of property, whether inter vi-vos or mortis causa, exceeding the quantum of which a person may legally dispose to the prejudice of the forced heirs, is not null, but only reducible to that quantum.
Any donation inter vivos, from the donor to his descendants, exceeding the quantum of which a person may legally dispose to the prejudice of forced heirs, is not reducible to that quantum if each such forced heir and the root represented by each forced heir receives the same value of property by donation inter vivos during the calendar year. Such donation inter vivos shall not be included in the calculation of the disposable portion as set forth in Article 1234 nor as set forth in Article 1505.”