510 So.2d 1328 (1987)
Patricia Jones NARCISSE, Plaintiff-Appellant,
v.
EMPLOYERS INSURANCE OF WAUSAU, the Macke Company, d/b/a G.W. Pepper Cafe Shop, Defendants-Appellees.
No. 86-680.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1987.
*1329 Alfred F. Boustany, II, Lafayette, for plaintiff-appellant.
Jeansonne & Briney, Charles J. Foret, Lafayette, for plaintiff-appellee.
Before GUIDRY, STOKER and DOUCET, JJ.
STOKER, Judge.
Patricia Narcisse has appealed the judgment of the trial court which dismissed her claim for worker's compensation benefits, penalties and attorney's fees. The trial court determined that the plaintiff failed to prove a work-related accident and resulting disability. We affirm the judgment of the trial court.

FACTS
The trial court, in its excellent reasons for judgment, set forth the following comprehensive summary of the facts in this case which we adopt herein as our own. Those facts, as found by the trial court, are as follows:
"The plaintiff, Patricia Jones Narcisse, brings this worker's compensation claim alleging she was injured while working in the course and scope of her employment for defendant on January 30, 1985. Defendants have denied that a work related accident ever occurred and further deny plaintiff suffers or ever suffered from any disability whatsoever.
"Did an accident occur?
"Before January 30, 1985 Ms. Narcisse was employed by the defendant, The Macke Company, d/b/a G.W. Peppers Coffee Shop. Her duties consisted of waiting on tables, cleaning tables, loading dishes into large trays, carrying trays of dishes, and keeping the restaurant clean. She was earning minimum wage. At this time plaintiff had no history of serious illness and her only hospitalizations were for the birth of her children.
"On January 30, 1985 the plaintiff reported to work as usual. It was an extremely foggy day. All air traffic out of the Lafayette Airport was grounded. For the plaintiff and those other employees working in the restaurant it was one of the busiest days of the year. Grounded planes left stranded passengers who had no other place to go but the airport restaurant.
"The plaintiff was the only waitress on duty. She worked with the cook and her manager, Ann McKay. She not only took the orders from the customers, she also cleaned tables and loaded the dishes into large containers. She then carried those containers to the back of the restaurant.
"Ms Narcisse testified that at around 11:00 a.m. the restaurant was crowded. The manager was behind the cash register, the cook was behind her counter, and Patricia Narcisse was cleaning a table. Ms. Narcisse testified that as she completed loading the dishes into a large plastic container she reached down to lift the container full of dishes. When [sic] she felt a severe pain in her upper and lower back. She completed her shift. Upon leaving, she claimed she told Ms. McKay about her injury and that she had to go home and sleep on a heating pad. She did not know if Ms. McKay heard her. She stated her future father-in-law, Maurice Hopkins, picked her up that day. He had to help her from his truck and up the stairs to their house. She then went straight to bed instead of doing her usual house cleaning.
"Upon the advice of her fiance on Thursday morning she called Ms. McKay to tell her she had a sore throat and she would not be in to work that day. She said she was afraid to tell McKay the real reason because she was afraid of being fired.
"She stated she went in on Friday morning but there was a sign on the restaurant door saying it was closed until 12:00. She went home and laid down. She then called Ms. McKay that afternoon to tell her she would be in on Monday. *1330 McKay informed her at that time she would not have a job.
"On that Friday evening Ms. McKay was informed by plaintiff's attorney of the alleged accident. Ms. McKay then referred plaintiff to Dr. Ann Thorn, an internist, for examination.
"Ms. Narcisse listed several witnesses on the Employer's First Report of Injury dated February 4, 1985 which was signed by Ms. Narcisse. These were witnesses and/or people she had told about the accident. They included Bernice Malbrough, Barbara Zenon, Brian Hulin and Ann McKay.
"At trial all of the witnesses listed denied that they witnessed and/or were told about the alleged injury on the date of the accident.
"Ms. McKay testified she was unaware of the incident until the afternoon of Friday, February 1, 1985. Ms. McKay was never told by plaintiff or any other employees about any injury. She admitted she may have told plaintiff, at the end of her shift, to rest but that was because it had been such a busy day and not because of any injury plaintiff had sustained. She unequivocally denied that the restaurant was closed that Friday as plaintiff claimed.
"Ms. Zenon testified she did not witness an accident and was never told by Ms. Narcisse at any time that she injured her back.
"Bernice Malbrough testified that Ms. Narcisse did not tell her of her injury and that she did not witness an accident. Ms. Malbrough stated she gave plaintiff a ride home after work that day. Ms. Narcisse never complained of a back injury. According to Ms. Malbrough they drove to pick up Ms. Narcisse's child at the babysitter and plaintiff was able to carry her child, who was eleven (11) months old, without assistance.
"Ms. Malbrough was positive about the date because her sister died the next day. Ms. Malbrough produced a memorial pamphlet which showed the date of her sister's burial as February 9, 1985. Ms. Malbrough explained that due to the frozen condition of the ground at that time her family was unable to bury her sister until nine (9) days after her death.
"Brian Hulin, plaintiff's counsin (sic) worked at the Hertz counter at the airport. He never saw plaintiff hurt herself at the restaurant.
"He stated that in the early part of the year plaintiff approached him about being a witness for her. He stated she approached him on a Saturday because he was at that time working with one of his trainees who only worked weekends. Hulin stated that at this time plaintiff told him she had slipped and fallen in the restaurant.
"Joyce Cohorn, worked for National Car Rental at the airport located across from the restaurant. She testified that on Friday, February 1, 1985 plaintiff came in around 5:00 or 5:30 a.m. She stated plaintiff told her she had a sore throat and she was going home because someone was already working in the restaurant.
"Ms. Narcisse lived with her fiance, Smitty Broussard, his brother Paul Hopkins and their father Maurice Hopkins.
"Maurice Hopkins testified he brought Ms. Narcisse home the day of the accident in his truck and she could barely walk. He testified he picked her up at around 12:00 in the afternoon. Mr. Hopkins testified he was a supervisor and did not normally go on the job with his sons.
"Paul Hopkins testified that he had assumed Ms. Narcisse's household duties because she was unable to do them due to her injury. He stated his father would normally go on the job with them.
"Smitty Broussard stated that Ms. Narcisse had never, prior to January 30, 1985, had any back problems. He stated his father would normally go on the job with them but on the day of the accident the truck broke down.
"All three (3) of these witnesses stated on the day of the accident plaintiff told *1331 them she had injured her back picking up a container of dishes at work."
The trial court, in making its determination that the plaintiff failed to carry her burden of proving a work-related accident, applied the well-settled standards set forth in his reasons for judgment below:
"It is settled jurisprudence that the worker's compensation claimant has the burden of proving by a preponderance of the evidence that his disability is causally related to an accident that occurred during the course and scope of his employment. Prim vs. City of Shreveport, 297 So.2d 421 (La.1974); Stuckey vs. Home Insurance Co., 433 So.2d 776 (La.App. 3d Cir.1983), writ denied, 435 So.2d 450 (La.1983). The testimony of a claimant alone may be sufficient to prove the occurrence of a work-related accident, if such testimony is plausible, consistent, is supported by other circumstances appearing from the record and if there is nothing to discredit his account thereof. However, where the plaintiff's testimony is the sole evidence, it must be clear and convincing. Crochet vs. American Tobacco Co., 407 So.2d 1330 (La.App. 3d Cir.1981); Soileau vs. Bituminous Cas. Corp., 348 So.2d 1313 (La.App. 3d Cir. 1977); White vs. Freeport Chemical Company, 319 So.2d 563 (La.App. 4th Cir.1975), writ denied, 323 So.2d 132 (La. 1975). In evaluating the evidence, the Court should accept as true and uncontradicted testimony of a witness, even though the witness is a party, at least in the absence of circumstances casting suspicion on the reliability of this testimony. Fourroux vs. North-West Ins. Co., 462 So.2d 1327 (La.App. 3d Cir.1985) [writ denied, 465 So.2d 739 (La.1985)] and the cases cited therein.
"In this case plaintiff was the only witness to the alleged accident. The Court finds that there are several factors that tend to cast suspicion on plaintiff's testimony. Ms. Narcisse continued with her assigned duties even though she had allegedly been involved in an injury producing accident. Plaintiff never mentioned her accident to any of her co-employees. Each one of the employees listed on the Employer's First Report of Injury denied that they witnessed and/or were told about the alleged injury on the date of the accident. Plaintiff failed to tell Ms. McKay, her manager, the real reason why she did not report to work the day after the alleged accident. Her statement that she did not tell the truth because she was afraid of being fired shows a tendency on her part to provide only information that she finds in her best interest. All of the witnesses plaintiff called on her behalf live in the same house with her. There were several inconsistencies in their stories related to whether Maurice Hopkins was available and drove Ms. Narcisse home the day of the accident in his truck. Maurice Hopkins testified that he was a supervisor and normally did not go on the job with his sons. Smitty Broussard testified his father normally did go to the job site but on this day the truck broke down. Paul Hopkins testified his father would normally go on the job with them. He did not know anything about the truck breaking down. These inconsistencies tend to cast doubt on their recollection of the day of the accident. Ms. Malbrough's testimony that she drove plaintiff home on the day of the accident and that the entire time Ms. Narcisse never complained of a back injury is more reliable.
"The Court concludes that Ms. Narcisse failed to establish a work-related accident."
The trial court further concluded that a consideration of the totality of the medical evidence presented adequately established that the plaintiff suffered no disability.
In our review of this record we are guided by the language of the court in Canter v. Koehring, 283 So.2d 716, 724 (La.1973) that:
"When there is evidence before the trier of fact which, upon its reasonable *1332 evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts."
We conclude, after reviewing the facts and circumstances of this case, that the factual findings and the legal conclusions of the trial court are correct.
Accordingly, the judgment of the trial court is hereby affirmed. The costs of this appeal are assessed to the plaintiff-appellant.
AFFIRMED.