529 So.2d 69 (1988)
Juanita Parker FONTENOT, Plaintiff-Appellee,
v.
CITGO PETROLEUM CORPORATION, Defendant-Appellant.
No. 87-588.
Court of Appeal of Louisiana, Third Circuit.
June 22, 1988.
*70 McClain, Morgan & Savoy, Robert E. Morgan, Lake Charles, for plaintiff-appellee.
Jones, Tete, Nolen, Hanchey, Swift & Spears, Charles N. Harper, Lake Charles, for defendant-appellant.
Before DOMENGEAUX, STOKER and KING, JJ.
KING, Judge.
The issues presented by this appeal are whether or not the trial court was correct in finding plaintiff's worker's compensation claim had not prescribed, in finding defendant was arbitrary and capricious in not paying weekly worker's compensation benefits, and in awarding expenses incurred by the plaintiff while traveling to obtain physical therapy.
Juanita Parker Fontenot (hereinafter plaintiff) filed suit against Citgo Petroleum Corporation (hereinafter defendant) to recover weekly worker's compensation benefits and medically related expenses after she suffered an injury to her legs while in the course and scope of her employment. Plaintiff also sought penalties and attorney's fees for defendant's arbitrary and capricious failure to pay benefits when due. Defendant filed a peremptory exception alleging that more than one year had elapsed from the time of the injury to the time of the institution of suit. After trial on the merits, defendant's exception of prescription was overruled and judgment was rendered in favor of plaintiff and against defendant for weekly worker's compensation benefits, travel expenses for therapeutic treatment, and attorney's fees in the amount of $5,000.00. Defendant timely appealed. Plaintiff answered the appeal seeking an amendment of the trial court judgment for statutory penalties and an increase in attorney's fees. We affirm, but amend the trial court judgment to allow statutory penalties on all sums due and to grant an increase in attorney's fees for this appeal.

*71 FACTS
The facts are undisputed. This action for worker's compensation benefits arises out of an accident which occurred on July 6, 1984 while plaintiff was employed as a utility worker for defendant. Plaintiff was sitting on a handrail cleaning a large metal vat held by a forklift when the vat was accidentally dropped. The lip of the vat landed on her legs two inches above the knees and resulted in extensive tissue damage to the area around both knees. The parties stipulated that the accident occurred in the course and arising out of plaintiff's employment with defendant.
Plaintiff was taken to St. Patrick's Hospital where she was examined and treated by Dr. Edward Phillips. X-rays were taken of plaintiff's knees and it was determined that she suffered massive contusions and bruises. No fractures were detected.
Plaintiff returned to work several days after the accident, but remained on light duty for two weeks. She then took one week of vacation to better facilitate her recovery. Plaintiff testified that she was able to return to her regular duties following her vacation, but that she continued to experience severe pain in both knees and a burning sensation in her left leg. She further testified that she began to notice a significant improvement after two months, which led Dr. Phillips to discharge her on October 10, 1984.
Plaintiff's condition continued to show improvement for several months, however, she continued to undergo periodic medical treatment by defendant's plant physician, Dr. Bonnie Camp. She was required to visit defendant's medical department once every two or three months concerning problems with her knees. During these visits her knees were wrapped in ace bandages and anti-inflammatory medication was administered to reduce swelling.
In November or December, 1985, plaintiff noticed that her knees were progressively bowing inward and that there was a significant increase in pain and symptomology. At trial, plaintiff admitted to always being a little knock-kneed, but the change became so drastic that she attributed it to her knee injuries.
Dr. Camp referred plaintiff to an orthopedic surgeon, Dr. David Drez, who specializes in treatment of the knee. On January 13, 1986, Dr. Drez X-rayed plaintiff's left knee, which was the most symptomatic, and found, "She had a definite knock-kneed type deformity with increasing symptoms in her knees which were secondary to an arthritic condition." Dr. Drez placed plaintiff on various anti-inflammatory medications and recommended that she lose weight. Dr. Drez has also recommended that plaintiff undergo an osteotomy of the femur to relieve the pain in her knees and help her walk more freely.
Plaintiff consulted Dr. Drez again on February 14, 1986 when the pain in her knees became so unbearable that she could no longer go to work. Dr. Drez suggested that she stay off her legs for four weeks to see if her condition would improve. This period was extended another four weeks when plaintiff failed to show any sign of improvement. When continued rest and medication failed to result in any change in plaintiff's condition, Dr. Drez advised defendant's medical director, Dr. Camp, that plaintiff was permanently disabled and recommended that she be placed on disability status beginning February 14, 1986. Accordingly, Dr. Camp and other plant managers recommended to defendant's insurer, Kemper Insurance Company (hereinafter Kemper) that plaintiff be paid weekly worker's compensation benefits. Plaintiff has remained on sick leave since February 14, 1986 and has been unable to return to her regular duties at work. Plaintiff has not worked anywhere else due to her disability nor has she been offered a job by any other company.
Between 1982 and 1984, plaintiff had been treated by an orthopedic surgeon, Dr. Edmond Campbell, for an injury to her right knee. Dr. Campbell initially treated plaintiff in 1981 after she suffered an injury to her right knee which caused the cartilage to shatter and required surgical repair. Dr. Campbell had examined plaintiff on July 29, 1982, when she began to complain *72 of soreness in the right knee. X-rays revealed arthritis, which he treated by injections of a local anesthetic and cortisone. Dr. Campbell again treated plaintiff on June 20, 1983, when she complained of multiple knee joint pain. After a thorough examination, her condition was diagnosed by him as degenerative arthritis of the knees.
Although Dr. Phillips had initially examined and treated plaintiff on July 6, 1984 for the injuries she received in the accident, Dr. Campbell again examined plaintiff's knees on August 6, 1985 and administered another injection of cortisone. Dr. Campbell last saw plaintiff on April 11, 1986 when she consulted him to obtain a second opinion as to whether the surgery (osteotomy) suggested by Dr. Drez was necessary. He agreed with Dr. Drez's opinion that surgery was indicated, but stated that he was not sure the surgery would result in sufficient enough improvement to allow plaintiff to return to work.
On April 10, 1986, plaintiff filed a claim for compensation with the Office of Worker's Compensation. On May 29, 1986, the Office issued a certificate of rejection stating that the plaintiff's claim for indemnity had prescribed and that, in their opinion, no medical benefits were payable because the condition of plaintiff was not work-related.
Apparently relying on this recommendation, Kemper refused to pay any further weekly compensation benefits, but continued to pay all of plaintiff's medical benefits related to the accident and continued to pay expenses for plaintiff's on-going physical therapy.
On June 12, 1986, plaintiff filed a petition for worker's compensation benefits seeking compensation for total and permanent disability, payment of all medically related expenses, and penalties and attorney's fees. On September 9, 1986, defendant filed an answer and an Exception of Prescription alleging that more than one year had elapsed from the time of plaintiff's injury to the time of the institution of her suit.
On January 21, 1987, trial on the merits and on the Exception of Prescription was held. The trial court took the matter under advisement and on January 28, 1987, rendered written reasons for judgment. A written judgment was signed in favor of plaintiff, awarding her worker's compensation benefits at the rate of $245.00 per week for total and permanent disability. Additionally, the court awarded plaintiff $.20 per mile for previously incurred medical travel expenses for which Kemper had not reimbursed plaintiff, which included 171 round trips to the Y.M.C.A. for therapeutic rehabilitation. The trial court further awarded plaintiff attorney's fees in the amount of $5,000.00, after it made a finding of fact that defendant's failure to pay indemnity benefits was arbitrary and capricious, but did not award statutory penalties.
Defendant timely filed a suspensive appeal. Plaintiff answered the appeal seeking amendment of the trial court judgment for an award of penalties, under R.S. 23:1201(E), for 12% of all past due worker's compensation benefits, and an increase in attorney's fees for extra services rendered in connection with the appeal.
Defendant alleges the following assignments of error:
(1) The trial court erred in overruling the Exception of Prescription filed by defendants;
(2) The trial court erred in awarding travel expenses incurred by the plaintiff for trips to and from her home to the local YMCA to go swimming; and
(3) The trial court erred in awarding penalties and attorney's fees against the employer on the basis of its finding that its failure to pay weekly indemnity benefits was arbitrary and capricious.

PRESCRIPTION
The applicable provision of the Worker's Compensation Law is LSA-R.S. 23:1209, which reads in pertinent part as follows:
"A. In case of personal injury, including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or *73 death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed as provided in Subsection B of this Section and in this Chapter.... Also, when the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident."
Addressing the issue of prescription, defendant contends the traumatic injury suffered by plaintiff on July 6, 1984 produced immediate symptoms, which required ongoing treatment and that the one year prescriptive period began to run on that date or no later than October 10, 1984, when Dr. Phillips discharged plaintiff from his care to return to work. Defendant further contends that in any event, plaintiff's claim for benefits had prescribed before suit was instituted on June 12, 1986.
Plaintiff alleges that the claim filed with the Office of Worker's Compensation and her suit are both timely because her injury falls under the "developing injury rule" set forth in the last sentence of LSA-R.S. 23:1209(A). Plaintiff further alleges that, under this rule, prescription did not begin to run until February 14, 1986, when Dr. Drez determined she was permanently disabled and could no longer work for defendant.
In Cedotal v. Wausau Ins. Co., 497 So. 2d 395 (La.App. 3 Cir.1986), writ denied, 498 So.2d 757 (La.1986), this court summarized the well established "developing injury" rule set forth in LSA-R.S. 23:1209 as follows:
"This statute sets forth what is generally known as the `developing injury rule' and it has also been jurisprudentially interpreted as meaning that `an employee who becomes disabled after the one year prescriptive period (but within two years after the accident) will not be penalized by the loss of his compensation rights, unless he fails to bring suit to enforce them within one year after it is manifest, rather than conjectural, that he has a compensable claim.' Barker v. Aetna Cas. & Sur. Co., 380 So.2d 178, at page 179 (La.App. 1st Cir.1980), writ den., 383 So.2d 25 (La.1980), citing Bolden v. Georgia Cas. & Sur. Co., 363 So.2d 419, 422 (La.1978). The injury is considered sufficiently developed when the worker is substantially prevented by the disability from performing the duties of his employment. Palmer v. Carter Federal Credit U., 397 So.2d 50 (La.App. 2nd Cir.1981). Under the developing injury theory, the plaintiff need not prove that his injury resulted from a sudden unexpected traumatic event, i.e., an accident. `Plaintiff need only show that his disability was caused by a work activity which can be gradual and progressive in nature.' Loyd v. Ecko Fabricating Co., Inc., 433 So.2d 1063, at page 1065 (La. App. 5th Cir.1982), writ den., 435 So.2d 427 (La.1982), citing Harper v. Kast Metals Corporation, 397 So.2d 529 (La.App. 2nd Cir.1981), writ den., 401 So.2d 988 (La.1981). Plaintiff, however, bears the burden of proving by a preponderance of the evidence that a causal relationship exists between the disability complained of and a work-related accident. Johnson v. Travelers Insurance Company, 284 So.2d 888 (La.1973); Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (La.1971); Gorbach v. Buck Kreihs Company, Inc., 398 So.2d 1267 (La.App. 4th Cir.1981). Where a pre-existing condition is alleged to have been aggravated by an on-the-job injury to the point of disability, the plaintiff must also establish such aggravation by a preponderance of the evidence. Gorbach, supra; Johnson, supra; Jordan, supra." 497 So.2d at pages 400-401.
In his written reasons for judgment, the trial judge held that, although plaintiff had a pre-existing tendency toward a knee deformity and suffered from degenerative arthritis in both knees, the trauma from her injury and the subsequent manual labor she performed for defendant exacerbated the condition of her knees to the point *74 where her condition had developed into a state of disability. Based on this finding, he denied defendant's peremptory exception of prescription.
After review of the entire record, we agree with the trial judge's finding of fact as it is in accord with well established jurisprudence. We find that plaintiff's disability did not manifest itself, for purposes of recovery under the Worker's Compensation Act, until February 14, 1986, when she could no longer perform the duties of her employment.
Defendant argues this is not a case where the disability is gradual and progressive in nature and is caused by the work activity. We find the medical evidence in the record to be contrary to defendant's position. Dr. Campbell testified at trial that the knee condition was present to some extent before plaintiff began having trouble with her knees, but that she had developed a degenerative arthritis which was at least related to or has been aggravated by her knee injury of July 6, 1984. Dr. Campbell was also of the opinion that plaintiff's normal work duties with defendant had contributed to the progression of the arthritis.
In a medical report sent to Dr. Camp on May 12, 1986, Dr. Drez reached a similar conclusion. In his report, Dr. Drez noted an increase in symptomology from his initial examination of plaintiff and opined that there was a medical probability that the increasing valgus deformity, or knock-knees, and arthritis was related to the trauma received on July 6, 1984.
The medical reports admitted into evidence and the expert medical testimony all clearly establish that plaintiff's disabling condition did not manifest itself at the time of the accident on July 6, 1984, when she received bruises and contusions to her legs, or by October 10, 1984 when Dr. Phillips determined she had fully recovered from these initial injuries. Instead, the evidence indicates that plaintiff was a worker who experienced a normally non-disabling injury, but, because of her pre-existing arthritic condition, a disabling condition gradually developed and finally manifested itself in disability on February 14, 1986, almost two years after she was discharged from Dr. Phillip's care for the injuries received on July 6, 1984.
In this case, suit was timely filed within a year after the disabling condition manifested itself and within two years after the accident of July 6, 1984. As counsel for plaintiff noted in brief, the plaintiff could not have filed a claim before February 15, 1986 because she returned to work after her injury on July 6, 1984 and continued performing her complete duties at the same, then higher, wages until she was forced to stop working because of the disabling condition which finally became manifest.
Plaintiff has met her burden of proof by establishing by a preponderance of the evidence that her pre-existing arthritic condition was aggravated by her injury on July 6, 1984, and that her suit was filed timely. Therefore, we find the trial court did not commit manifest error in overruling defendants' Exception of Prescription. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).

TRAVEL EXPENSES FOR MEDICAL SERVICES
In its second assignment of error, defendant contends the trial court erred in awarding a portion of travel expenses submitted by plaintiff for 171 visits to the YMCA. Defendant argues this award was not recoverable because these trips were not reasonably related to medically necessary treatment or services. Defendant does not dispute the trial court's finding that plaintiff demonstrated a total of 6,457 miles of such travel or that she is entitled to recover a stipulated sum of $.20 per mile.
LSA-R.S. 23:1203(A) provides in pertinent part:
"In every case coming under this Chapter, the employer shall furnish all necessary medical, surgical, and hospital services, and medicines, or any nonmedical treatment recognized by the laws of this state as legal, ..."
*75 Further, LSA-R.S. 23:1203(C) provides in part:
"In addition, the employer shall be liable for the actual expenses reasonably and necessarily incurred by the employee for mileage reasonably and necessarily traveled by the employee in order to obtain the services, medicines, and prosthetic devices which the employer is required to furnish under this Section...."
This court has consistently construed LSA-R.S. 23:1203(A) as entitling an injured employee to all such treatment as is necessary to relieve pain resulting from a job-related disability. Mallet v. La. Nursing Homes, Inc., 459 So.2d 178 (La.App. 3 Cir. 1984), writs denied, 463 So.2d 604 and 605 (La.1985); Gourdon v. Rockwood Insurance Company, 368 So.2d 1156 (La.App. 3 Cir.1979). Pursuant to this interpretation of 23:1203(A), this court recently concluded that expenses associated with a medically supervised weight reduction program, undertaken to relieve pain caused by an on-the-job injury, are compensable as necessary medical expenses. Simmons v. La. Health and Human Resources, 502 So.2d 187 (La.App. 3 Cir.1987), writ denied, 503 So.2d 1017 (La.1987).
At trial it was shown that plaintiff is a large woman who weighed approximately 240 pounds at the time of the accident, and that this weight problem necessitated the adoption of a weight reduction program by plaintiff to relieve pain and retard deterioration of the knee joints caused by the arthritis. Plaintiff testified that Dr. Drez instructed her to stay off her feet as much as possible in order to halt the progressive deterioration of her knees. She further testified that Dr. Drez encouraged her to participate in a water exercise program offered by the YMCA that is specifically designed for arthritic patients. While at the YMCA plaintiff also did exercises on the Nautilus equipment, suggested by Dr. Drez, and used the whirlpool to keep her knee joints flexible. Plaintiff also stated Dr. Drez recommended this form of exercise because the stress on her knees would be minimal. Since January 13, 1986, when Dr. Drez began treating plaintiff, she has lost forty pounds. Thus, the exercise program has been effective in helping her achieve a significant weight loss and, presumably, has decreased the pain in the knees.
Deposition testimony given by Dr. Drez, which was admitted into evidence by a joint stipulation of the parties, is similar to that offered by the plaintiff at trial. When questioned about the therapeutic effects of the exercises, Dr. Drez testified as follows:
"Q. Mrs. Fontenot was going regularly to the YMCA. Is this something you had told her would be helpful?
A. You bet; I encouraged her to do that. They have a very nice program down there, and I encouraged her to go there and swim, since swimming is such a good exercise, does not load the joints, that she could do this, maintain motion and burn up enough calories to reduce her weight.
Q. In other words, it's knee motion without weight or just a minimum of force on it, is that the idea?
A. Yes.
Q. To keep the knees flexible? And as far as you know, she did go to the Y regularly except those occasions when she had an acute problem, would that be true?
A. I recall asking her several times if she was going to the YMCA and she said yes, but I don't know the frequency nor the duration.
Q. In her deposition, she said that she was doing some light exercises on the Nautilus machine at the Y with just leg flexion with very light weights. Did you advise her to do that? That was back, of course, before the arthroscopy.
A. I told her if she did an exercise and it caused swelling or pain, then she should not do that exercise. So she may have asked me about those things, and my response was would have been just what I said."
It is evident from his testimony that Dr. Drez encouraged plaintiff to visit the *76 YMCA and that he considered the exercise program and resulting weight loss to be medically beneficial. In fact, in a letter to Dr. Camp, dated February 18, 1986, Dr. Drez suggested that plaintiff be initially treated with nonoperative measures such as weight reduction and activity modification. After plaintiff began her program, Dr. Drez noticed positive results and suggested that she be kept on the program.
In light of the jurisprudence and the evidence in the record before us, we find that plaintiff's travel expenses in connection with a weight reduction program were compensable as necessary medical expenses and that the trial court's award was not an abuse of discretion or manifestly erroneous.

PENALTIES AND ATTORNEY'S FEES
The third assignment of error that defendant complains of is the court's award of attorney's fees in the amount of $5,000.00. Plaintiff also complains, by answer to the appeal, that the trial court failed to award a penalty of 12% upon past due weekly compensation benefits provided for in LSA-R.S. 23:1201. In his reasons for judgment, the trial judge made the following finding of fact relative to these issues:
"The information upon which this opinion is based has at all times been available to defendant. The only reason for non-payment was defendant's contention that plaintiff's claim was prescribed for failure to file a worker's compensation claim or suit within one year of the soft tissue injury on July 6, 1984. It must be considered arbitrary for refusing to pay benefits here ordered. Judicial interest at the rate of 12% per annum will be granted upon the amount of each unpaid weekly benefit from the date it became due, until paid. Attorneys fees will be fixed in the sum of $5,000.00 and judicial interest thereon granted from the date of judgment."
Defendant contends that, on its face, plaintiff's claim had already prescribed by April 10, 1986 when her claim was filed with the Office of Worker's Compensation and before the present suit was filed on June 12, 1986. Defendant argues plaintiff has the burden of disproving prescription and that defendant should not be found arbitrary and capricious for asserting a valid legal defense as provided in R.S. 23:1209. Additionally, defendant argues attorney's fees should not have been awarded in this case because the Office of Worker's Compensation recommended that the claim was not work-related and had prescribed. We find there is no merit to either argument.
LSA-R.S. 23:1201.2 provides that a court may assess penalties and attorney's fees against an employer or insurer who arbitrarily, capriciously, or without probable cause, fails to pay a claim within sixty days of written notice of the claim. Louisiana courts have consistently held that LSA-R.S. 23:1201.2 is penal in nature and, as such, must be strictly construed so that employers are not penalized for taking close factual questions to court for resolution, and for relying on valid defenses. Crawford v. Al Smith P & H Service, Inc., 352 So.2d 669 (La.1977); Hale v. Pinecrest State School, 505 So.2d 987 (La.App. 3 Cir.1987), writs denied, 508 So.2d 68 and 76 (La.1982); Hargrave v. Monteaux, 467 So. 2d 81 (La.App. 3 Cir.1985). However, where an employer fails to pay worker's compensation benefits within sixty days of notice of facts not reasonably disputed, indicating that the employee was entitled to compensation as of the dates claimed, it will be deemed arbitrary, capricious and without probable cause, and subject to penalties and attorney's fees. Bordelon v. Vulcan Materials, Co., 472 So.2d 5 (La. 1985); Cobb v. Boswell Sawmill, Inc., 469 So.2d 407 (La.App. 3 Cir.1985).
There is no factual dispute in this case regarding causation or that plaintiff is permanently disabled; nor do the facts indicate that defendant was unaware of when plaintiff's condition legally gave rise to a claim for benefits. Dr. Drez, in his letter to Dr. Camp on February 18, 1986, reported that he had examined plaintiff and was of the opinion that she would not be able to return to her normal duties because *77 of the progression of the arthritis. After receiving this letter, Dr. Camp recommended that plaintiff be paid permanent disability benefits. This recommendation was communicated to her superior, Bill Gray, and to Mr. Burt Summis, personnel manager of Citgo in Lake Charles who is responsible for arranging payment of worker's compensation with Kemper. Since February 17, 1986, Dr. Camp has not withdrawn her recommendation that plaintiff remain on sick leave.
In a letter dated March 15, 1986, Mr. Summis gave notice to Kemper of the recommendation arrived at by himself, Mr. Gray, and Dr. Camp. The letter specifically requested that Kemper approve worker's compensation for plaintiff from February 17, 1986 at the rate of $245.00 per week.
After receiving this recommendation, Kemper expressed a concern about whether plaintiff's knee problems were job-related. Because of these concerns, Dr. Drez was asked to perform another evaluation. In a subsequent evaluation report dated May 12, 1986, Dr. Drez opined that there was a medical probability that the increasing valgus deformity and arthritis was related to the trauma received on July 6, 1984. A copy of this report was mailed to Kemper.
Dr. Camp wrote another letter to Kemper on August 20, 1986 to inform them that her medical records revealed no history of lost time or complaint of pain made by plaintiff as a result of the valgus deformity prior to the accident of July 6, 1984. The evidence is uncontroverted that Kemper was constantly apprised of plaintiff's condition and was aware that she was legally disabled as of February, 1986. Defendant's defense of prescription was not valid and was not supported by all of the medical reports it received.
Defendant's argument that it relied on the recommendation from the Department of Labor is also without merit. The advisory opinion, even when admitted into evidence, does not carry any presumption of correctness as to facts or the law. Defendant's reliance on this recommendation will not shield it from liability where the law in question is clear and undisputed and there is no close factual dispute to be resolved by the trial court. Theriot v. American Employees Ins. Co., 482 So.2d 648 (La.App. 3 Cir.1986).
The issue of whether the refusal to pay compensation benefits was arbitrary and capricious is a factual determination which must be determined by the merits of each case. Delco v. Heritage Manor Nursing Home, 441 So.2d 309 (La.App. 3 Cir.1983), writ denied, 443 So.2d 1123 (La.1984). We cannot say the trial court was clearly wrong in finding that defendant was arbitrary and capricious in refusing to initiate payment of weekly benefits or expenses incurred by traveling to obtain physical therapy. Arceneaux v. Domingue, supra.
LSA-R.S. 23:1201 provides that the employee shall be entitled to penalties from the employer or insurer where the installment of benefits payable for permanent disability is not paid within fourteen days after the employer has knowledge of the injury, unless non-payment results from conditions over which the employer has no control or the payment is reasonably controverted by the employer. Walker v. Aetna Cas. and Sur. Co., 488 So.2d 397, 399 (La.App. 3 Cir.1986).
On appeal, defendant does not claim that the nonpayment resulted from conditions over which it had no control. Applying the test established by this court in Chelette v. American Guarantee and Liability Insurance, Inc., 480 So.2d 363 (La.App. 3 Cir.1985), it is clear that defendant had no reasonable basis to refuse payment of compensation benefits to plaintiff. As we have already noted, defendant had all factual and medical information in its possession, and there was no factual or medical information which could lead defendant to believe that compensation was not due.
The trial judge apparently overlooked awarding statutory penalties as he found the defendant's refusal to pay weekly benefits arbitrary and capricious and awarded statutory attorney's fees. For this reason, we amend the trial court judgment to award statutory penalties of 12% on all weekly compensation benefits past due, *78 plus legal interest from the day each unpaid amount was due, until paid.
In her answer to this appeal, plaintiff seeks an additional $1,500.00 in attorney's fees for legal services rendered in connection with this appeal. After reviewing the entire record we are of the opinion that $500.00 is an adequate award for attorney's fees to plaintiff's attorney for services rendered on appeal.
For the reasons assigned, the judgment of the trial court is affirmed and amended to include an award of a penalty of 12% on all weekly compensation benefits past due, plus legal interest from the day each unpaid amount was due, until paid, and attorney's fees of $500.00 for services rendered by plaintiff's attorney on appeal. In all other respects, the judgment of the trial court is affirmed. All costs of this appeal are to be paid by defendant-appellant, Citgo Petroleum Corporation.
AMENDED AND AFFIRMED.