KNOLL, Judge.
.J.A.C.E. Oilfield Sales & Service, Inc. (hereafter J.A.C.E.) and its worker’s compensation insurer, State Farm Fire & Casualty Insurance Company (hereafter State Farm), appeal the judgment of the trial court which awarded James Mahfouz benefits for temporary total disability as well as statutory penalties and attorney’s fees.
FACTS
The facts of this case center on Mahfouz’s most recent employment as a carbide welder at J.A.C.E. which began in April 1987; Mahfouz had previously worked for either J.A.C.E. or one of its affiliates, Eaton Oil. Prior to his re-employment, George Eaton, the co-owner of J.A.C.E., sent Mahfouz to Dr. Kirkland Swan, a general practitioner, for a preem-ployment physical. Mahfouz indicated on a medical history questionnaire that he had a pulled muscle in his lower back during his employment in 1985 with Eaton Oil, that he missed two month’s work then, but that he had no back trouble since. Dr. Swan recommended Mahfouz for employment. Nevertheless, as part of his medical examination, Mahfouz was sent for back X rays to Dr. Fred C. Webre. At that time, Dr. Webre determined that Mahfouz suffered from spondylolysis at L-4, bilaterally, a congenital defect. Based on this finding, Dr. Webre did not recommend Mahfouz for employment. Despite these medical findings, Eaton hired Mahfouz anyway because he was a good welder.
Mahfouz worked continuously for the next five and one-half months without complaint of back pain or back discomfort. On September 24, 1987, Mahfouz, with Eaton’s knowledge, consulted Dr. Webre for pain in the lower back. Dr. Webre examined Mahfouz on September 24, 1987, and found that he had soreness in the upper and lower back, with a greater intensity in the lumbo-sacral area; based on his examination, Dr. Webre did not restrict Mahfouz from working. Mahfouz never consulted Dr. Webre again. Mahfouz, instead, continued his normal work activities for another two weeks. At 3:00 a.m. on October 10, 1987, Mahfouz received a call from one of J.A.C. E.’s customer’s for emergency work. Mahfouz told the customer that he was unable to do the work because he was suffering back pain. Later that morning, Eaton discharged Mahfouz from his employment at J.A.C.E., contending that Mahfouz just did not want to do the work.
On October 29, 1987, Mahfouz consulted Dr. John Humphries, an orthopaedist, for continued pain in his lower back. After conducting an examination, Dr. Humphries concluded that Mahfouz suffered an acute lumbar strain superimposed upon spondylo-lysis, and that conservative treatment was required. At the time of trial, Mahfouz’s condition had deteriorated and he was still under Dr. Humphries’ care.
Two months after his discharge, Mahfouz initiated an administrative claim for worker’s compensation, claiming that he had suffered a back injury caused by a work accident. J.A.C.E. reported the claim to State Farm, stating that it was not aware of any job accident and that it had no communications from any doctors claiming payment for Mahfouz’s medical treatment. This litigation then ensued.
Pursuant to LSA-R.S. 13:716(E), this matter was heard, by consent of the parties, before a commissioner. On appeal, J.A.C.E. and State Farm do not contest the commissioner’s determination that Mahfouz is temporarily totally disabled. J.A. C.E. and State Farm contend that the trial court was manifestly erroneous in finding: (1) that a work accident occurred on September 18, 1987; and, (2) that they were arbitrary and capricious in not paying worker’s compensation benefits to Mahfouz. Mahfouz has answered the appeal, seeking an increase in attorney’s fees and damages for a frivolous appeal.
WORK ACCIDENT
J.A.C.E. and State Farm first contend that the commissioner manifestly erred in its conclusion that Mahfouz suffered a job accident on September 18, 1987. They ar *344 gue that the commissioner erroneously focused on whether J.A.C.E. had notice of a work accident, that it ignored medical testimony which showed that Mahfouz had not suffered any particular accident at work, and in characterizing Mahfouz’s testimony as uncontroverted. They further argue that Mahfouz failed to establish that his employment activities aggravated his preexisting condition such that it fell within the meaning of “accident” as contemplated by the worker’s compensation law.
The threshold which all worker’s compensation claimants must overcome is set forth in LSA-R.S. 23:1031 which provides that for an employee to be entitled to worker’s compensation benefits he must receive a “personal injury by accident arising out of and in the course of his employ-ment_” Although the worker’s compensation act does not state which party in a suit for compensation benefits bears the burden of proof, or what that burden shall be, the jurisprudence is well settled that the claimant bears the burden of proving his case by a preponderance of the evidence. Foreman v. Barras Lighting Elec. Co., 509 So.2d 698 (La.App. 3rd Cir. 1987), writ denied, 512 So.2d 441 (La.1987). The testimony of a claimant alone may be sufficient to prove the occurrence of a work related accident, if such testimony is plausible, consistent, is supported by other circumstances appearing from the record and if there is nothing to discredit his account. However, where the plaintiff’s testimony is the sole evidence, it must be clear and convincing. Narcisse v. Employers Ins. of Wausau, 510 So.2d 1328 (La.App. 3rd Cir. 1987). In evaluating the evidence, the court should accept as true and uncontra-dicted testimony of a witness, even though the witness is a party, at least in the absence of circumstances casting suspicion on the reliability of this testimony. Id. at 1331.
It is well settled that when there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s findings, the appellate court, upon review, should not disturb that factual finding in the absence of manifest error. Provost v. Transportation Ins. Co., 524 So.2d 800 (La.App. 3rd Cir. 1988).
In its attack on the commissioner’s findings, J.A.C.E. contends that Mahfouz’s testimony regarding the occurrence of an accident at work was controverted. In this regard, it points out that on Mahfouz’s medical history which he submitted to Dr. Webre on the Thursday after the accident, Mahfouz reported having no particular accident at work and stated that driving, not his work at J.A.C.E., caused him the most lower back pain.
The evidence is undisputed that J.A.C.E. knew that Mahfouz had a congenital back defect, and that J.A.C.E. hired Mahfouz against the recommendation of Dr. Webre because of Mahfouz’s excellent work history and performance.
Mahfouz testified that on Friday, September 18, 1987, he injured his back, picking up a rotary shoe which weighed approximately 200 pounds, and at the time of the accident, he was the only J.A.C.E. employee on the premises. He stated that immediately upon feeling tightness in his back, he went into the office where his wife was,[1] and told her that he thought he hurt his back picking up the rotary shoe. On the following Monday, Mahfouz’s wife drove him to J.A.C.E. to notify Eaton that his back was hurting from picking up the tools and that he needed to see a doctor. At that time, Eaton advised Mahfouz that J.A.C.E. was not responsible for his medical bills, because he had a congenital back defect. Although Eaton did not dispute that he met with Mahfouz on the Monday following the alleged accident, Eaton testified that Mahfouz told him that his back hurt, not that he had an accident on the previous Friday. It is nevertheless undisputed that Eaton excused Mahfouz from work on the Monday following the accident because of a hurt back, and again on the Thursday of that week for Mahfouz to consult with Dr. Webre.
*345 The most serious contention by J.A.C.E. and State Farm is their reliance upon Dr. Webre’s statement that Mahfouz could not relate his back injury to a work accident. In summarizing Mahfouz’s medical testimony, Dr. Webre stated, “He [Mahfouz] said he did a lot of heavy straining but could recall no injury to the back.” Viewed in light of Dr. Webre’s testimony, an opinion concurred in by Dr. Humphries, the treating physician, that Mahfouz’s work as a welder could produce an amount of strain on his defective back sufficient to make Mahfouz’s spondylolysis symptomatic, we cannot say that Dr. Webre’s testimony is inconsistent with Mahfouz’s recollection of what occurred at work, i.e., that he received a work injury when he manipulated the rotary shoe, and that Mahfouz may not have considered this everyday element of his job as constituting an accident.
In a related issue, J.A.C.E. and State Farm contend that the corroborating testimony of Mahfouz’s wife and his friend, Ronald Romero, was insufficient to support Mahfouz’s claim that an accident occurred at work on September 18, 1987. We disagree.
Mahfouz’s wife, Rosemary, testified that although she did not witness her husband’s accident, shortly thereafter her husband came into the office she was cleaning at J.A.C.E., complaining that he hurt his back when he manipulated the rotary shoe into a suitable welding position. She likewise related to the court that her husband was in pain throughout the weekend, and due to his back pain she drove him to work on Monday morning in order for him to confer with Eaton.
Ronald Romero, a friend of Mahfouz, visited the J.A.C.E. shop on the afternoon of the accident and testified that Mahfouz was suffering with a back injury. Romero further testified that on the following Friday, the day after Mahfouz was treated by Dr. Webre, he was present when Eaton inquired about what Dr. Webre had told him about the back injury.
After reviewing the testimony of Mahfouz’s wife and Romero, we cannot say that the commissioner erred in considering their testimony as corroborative of Mahfouz’s assertion that he suffered an accident on the job.
In an ancillary argument, J.A.C.E. and State Farm contend that the commissioner failed to consider that Mahfouz initiated this worker’s compensation claim only after his application for unemployment benefits was turned down and was motivated out of resentment for his termination.
It is clear that Mahfouz’s claim for worker’s compensation obviously rests on a work accident which occurred prior to the adjudication of his unemployment claim. (He was declined benefits because he had not been employed long enough.) At the time of the accident, Mahfouz testified that he had no knowledge that he had a congenital back defect. Eaton’s testimony on the factual issue of Mahfouz’s knowledge of a back defect was diametrically opposed to that of Mahfouz — Eaton’s contention being that he made Mahfouz aware of the back defect when he received Dr. Webre’s X ray report prior to Mahfouz’s employment. The commissioner heard Mahfouz’s testimony and that of his wife that he had no knowledge of his back defect until Eaton told Mahfouz on the Monday following the accident that J.A.C.E. would not pay his medical expenses because of the pre-exist-ing spondylolysis. They further testified that when Mahfouz was hospitalized in 1985 for a back problem, the X rays and CT scan taken revealed no such defect. Moreover, the record shows that the first time Dr. Webre discussed Mahfouz’s X ray results was on September 24, 1987, after the accident.[2] Likewise, there is no evidence in the record that Mahfouz missed work because of his back problems.
*346 On this issue the commissioner was presented with a credibility question. After carefully considering the entirety of the record, we can not say that the commissioner was manifestly erroneous in rejecting an attack on Mahfouz’s credibility.
Therefore, after considering the totality of the evidence presented, we can not say that the commissioner was manifestly erroneous in awarding worker’s compensation benefits on a finding that Mahfouz carried his burden of proving that he received a personal injury by accident arising out of and in the course of his employment with J.A.C.E.
PENALTIES AND ATTORNEY’S FEES
J.A.C.E. and State Farm next contend that the commissioner was manifestly erroneous in awarding Mahfouz statutory penalties and attorney’s fees against both of them.
Under LSA-R.S. 23:1201, the employer and/or insurer escapes the payment of statutory penalties if non-payment results from conditions over which the employer or insurer had no control, or if the latter can “reasonably controvert” the employee’s right to medical and compensation benefits. If non-payment did not result from conditions over which the employer or insurer had no control or if the employer or insurer is not able to reasonably controvert the employee’s right to such benefits, then penalties attach if payment of said benefits does not take place by the fourteenth day after the employer or his insurer had knowledge of the compensable injury. Chelette v. American Guar. & Liability Ins., 480 So.2d 363 (La.App. 3rd Cir.1985).
Likewise, under LSA-R.S. 23:1201.2 attorney’s fees are imposed if the insurer is found to be arbitrary, capricious, or without probable cause in its failure to pay a claim within 60 days after receipt of written notice of same. Id. at 368.
As pointed out in Stevenson v. Bolton Co., Inc., 484 So.2d 678, 685 (La.App. 1st Cir.1985), writ denied, 489 So.2d 247 (La.1986):
“The purpose of the penalty and attorney fee provision of the worker’s compensation law is to require the employer or the insurer to pay timely the benefits owed to the employee and to avoid the necessity of the employee retaining the services of an attorney to file suit. It has been recognized that even though the penalty statute speaks in terms of the requirement of 60 day notice, the absence of written notice to an employer of compen-sable injury cannot prevent collection of penalties where the employer had actual and immediate knowledge of the claimant’s injury, and its refusal to pay benefits was not based on absence of notice.”
Further, notice to the employer is construed as notice to the insurer for purposes of invoking penalties and attorney’s fees in these cases. Antoine v. Houston Fire & Casualty Co., 232 So.2d 588 (La.App. 3rd Cir.1970).
In the present case, Mahfouz has received no worker’s compensation benefits and none of his medical expenses have been paid by either J.A.C.E. or its insurer, State Farm. Moreover, Mahfouz has not been able to utilize the physical therapy recommended by Dr. Humphries because he has no funds available for such treatment.
The issue of whether the refusal to pay compensation benefits was arbitrary and capricious is a factual determination which must be determined by the merits of each case. Fontenot v. Citgo Petroleum Cory., 529 So.2d 69 (La.App. 3rd Cir.1988). After considering J.A.C.E.’s knowledge of Mahfouz’s congenital back defect, the awareness by J.A.C.E. on the Monday following the accident that Mahfouz was injured, and the medical testimony received by the pre-trial deposition of Dr. Hum-phries’ that Mahfouz could not work, we can not say that the commissioner’s determination of the issues of penalties and attorney’s fees was manifestly erroneous.
However, in reviewing the judgment we note that the commissioner did not designate against whom it assessed the penalties and attorney’s fees. Under the provisions of LSA-R.S. 23:1201 both the employer and its insurer may be assessed with penalties. However, under LSA-R.S. 23:1201.2, only the employer’s insurer may be cast with *347 attorney’s fees. Therefore, we shall amend the judgment to so reflect such differentiation.
In his answer to the appeal, Mahfouz seeks damages for a frivolous appeal. After reviewing the record of this matter, we can not say that J.A.C.E. and State Farm’s appeal was frivolous. Additionally, Mahfouz seeks an increase in attorney’s fees in defense of the commissioner’s judgment. We find that Mahfouz is entitled to additional attorney’s fees of $1500 against State Farm.
For the foregoing reasons, the judgment of the trial court is amended and recast as follows, and, as amended, is affirmed: IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of James Mahfouz and against the defendants, J.A.C.E. Oilfield Sales & Service, Inc. and State Farm Fire & Casualty Insurance Company, awarding James Mahfouz a penalty of twelve percent on all compensation payments, past and future, which have been paid or might be paid after their due date, together with legal interest from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of James Mahfouz and against State Farm Fire & Casualty Insurance Company for attorney’s fees in the amount of $5,000 with legal interest from the date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of James Mahfouz and against State Farm Fire & Casualty Insurance Company for additional attorney’s fees in the amount of $1500 for defending this appeal.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that except as amended, the judgment of the trial court is affirmed. All costs of trial and this appeal are assessed to J.A.C.E. and State Farm.
AMENDED AND AFFIRMED AS AMENDED.

. Mahfouz’s wife was there when the accident happened because she performed the janitorial services for J.A.C.E. and was cleaning the offices at that time.

. The only evidence contrary to this finding is Dr. Webre’s testimony that Mahfouz called him on September 2, 1987, prior to the accident, complaining of a backache and wanting to know about his X rays. However, the record is void of any testimony that Dr. Webre informed Mahfouz of his congenital back defect on that date. On the other hand, it is uncontroverted that Dr. Webre only discussed his preemployment medical findings with Eaton at J.A.C.E., and that Eaton employed Mahfouz over Dr. We-bre’s recommendations.