537 So.2d 328 (1988)
Joe Everett HALL
v.
McDONALD INSULATION and Chubb Insurance Company.
No. 88 CA 1159.
Court of Appeal of Louisiana, First Circuit.
December 20, 1988.
*329 Thomas B. Waterman, Ponchatoula, for plaintiff-appellee.
Denis Paul Juge and George W. Byrne, Jr., New Orleans, for defendants-appellants McDonald Insulation, et al.
Before CARTER, LANIER and LeBLANC, JJ.
CARTER, Judge.
This is an action for worker's compensation benefits brought by Joe Everett Hall (plaintiff) against his employer, McDonald Insulation (McDonald), and Chubb Insurance Company (Chubb), McDonald's insurer.

FACTS
On October 12, 1987, plaintiff began working for McDonald as a manual laborer. He was paid $6.00 per hour based on a forty-hour work week. Plaintiff worked twelve hours on Monday, October 12, 1987. On Tuesday, October 13, 1987, shortly after the work day began, plaintiff was injured at the job site. At the time of the accident, plaintiff was engaged in assisting two men who were using an electric scissor lift. Plaintiff's job was to keep the electrical cord from falling beneath the wheels of the *330 machine. Plaintiff testified that, while engaged in this activity, he tripped and fell backwards on a pipe that was sticking out of the floor. Plaintiff claims that the accident resulted in injuries to his back and left foot. Plaintiff continued to work for about thirty minutes after the accident and then told George Hope, the job supervisor, that he was leaving to go to the doctor. Hope admitted that he had witnessed the incident, but testified that plaintiff had only stubbed his toe.
On the day of the accident, plaintiff visited Dr. Charles Genovese, Sr., his family physician. Dr. Genovese testified that plaintiff reported that he had fallen. Dr. Genovese testified that he did not perform a detailed examination because he felt he would not be treating plaintiff's injury; however, he referred plaintiff to Lallie Kemp Charity Hospital for treatment. Dr. Genovese also gave the plaintiff a note confining him to his home for one week. The note was subsequently delivered to Hope by plaintiff's relatives. Although Dr. Genovese made no notes relative to plaintiff's complaints, he was able to recall that the complaints were related to plaintiff's fall.
On the night of October 16, 1987, plaintiff went to Lallie Kemp Charity Hospital in Independence, Louisiana, where he was seen by the emergency room physician, Dr. John T. Lindsey. Dr. Lindsey's records indicated that plaintiff reported that he had injured himself while working in a warehouse four days earlier. Plaintiff complained of foot pain and a knee injury. Dr. Lindsey examined plaintiff's foot and knee and had x-rays taken of the foot. Dr. Lindsey wrapped plaintiff's foot in an ace bandage, placed the foot in a splint, and referred plaintiff to the orthopedic clinic at Lallie Kemp. Dr. Lindsey could not remember whether plaintiff left the hospital on crutches. Plaintiff did not see Dr. Lindsey after this initial examination.
When he continued to experience pain, plaintiff visited Dr. John Watermier, an orthopedic surgeon, on October 21, 1987. Dr. Watermier examined plaintiff and determined that plaintiff had a possible fracture to the bones of the left foot and sprained muscles and ligaments in the lower back. Dr. Watermier placed plaintiff's leg in a cast for eight weeks. Dr. Watermier continued to treat plaintiff and diagnosed his injury as lumbar disc syndrome and possible sympathetic dystrophy of the foot. Dr. Watermier testified that plaintiff was totally disabled and recommended hospital treatment and further tests.
On March 10, 1988, plaintiff was also examined by Dr. Luis F. Matta, who examined plaintiff on behalf of the defendants on only this one occasion. Dr. Matta prescribed a six-week therapy program for plaintiff. Dr. Matta testified that his examination revealed that plaintiff could possibly do light work. However, Dr. Matta acknowledged that, based upon his own experience with restricting a patient to light duty around areas of heavy work, this recommendation was usually ignored. Dr. Matta explained that either the patient violated the light work order or the patient's supervisor required the patient to return to regular work. It was Dr. Matta's conclusion that a light work order was not conducive to good management of a patient.
Plaintiff was also seen by Ms. Jennifer Palmer, a vocational rehabilitation counselor. Ms. Palmer testified that she felt plaintiff could return to his former employment or seek employment in one of the areas in which he is trained. Plaintiff is trained as a diesel mechanic, a welder, a sandblaster, and a painter. Because plaintiff is well-trained, Ms. Palmer did not consider him a candidate for rehabilitation. In arriving at these conclusions, it is apparent that Ms. Palmer discounted plaintiff's injuries.
The trial judge awarded plaintiff compensation benefits for temporary total disability beginning October 13, 1987, and to continue throughout his disability and all medical expenses incurred by plaintiff, with legal interest on these amounts from the date of judicial demand. Penalties were awarded on each past due worker's compensation payment and past due medical expenses at 12%. Attorney's fees were awarded in the amount of $5,000.00, together with legal interest from the date of *331 judicial demand. Costs including expert witness fees were assessed to McDonald and Chubb. From this judgment, McDonald and Chubb appealed. Plaintiff answered the appeal, requesting an increase in the award of attorney's fees.

ASSIGNMENTS OF ERROR
McDonald and Chubb assign the following errors:
I. The trial court erred in finding Joe Everett Hall to be temporarily totally disabled.
II. The trial court erred in awarding penalties and attorney's fees.
III. The trial court erred in awarding a 12% penalty on medical expenses.
IV. The trial court erred in awarding judicial interest on worker's compensation benefits from the date of judicial demand.
V. The trial court erred in awarding judicial interest on the award of attorney's fees from the date of judicial demand.

ASSIGNMENT OF ERROR NO. 1

(Temporary Total Disability)
Although much of the medical evidence presented herein consists of depositions, we are required to apply the manifest error standard to the trial court's decision. We are not therefore authorized to assess credibility and weigh medical evidence independent of the trial court's finding. Virgil v. American Guarantee And Liability Insurance Company, 507 So.2d 825 (La. 1987).
We do not find that the trial court was manifestly erroneous in finding that plaintiff was temporarily totally disabled. Plaintiff's treating physician testified that he believed the plaintiff was temporarily totally disabled. Dr. Matta disagreed. However, the general rule is that the diagnosis of a treating physician is entitled to more weight than the diagnosis of a physician consulted for the purpose of litigation only. Schouest v. J. Ray McDermott & Co., Inc., 411 So.2d 1042 (La.1982).
After carefully reviewing the entire record under the appropriate standard, we cannot say that the trial court's findings were manifestly erroneous. We therefore find this assignment of error to be without merit.

ASSIGNMENT OF ERROR NO. 2

(Penalties and Attorney's Fees)
McDonald and Chubb contend that an award of statutory penalties and attorney's fees was not warranted in this case. This court in Young v. Western Electric Co., Inc., 486 So.2d 962 (La.App. 1st Cir.1986) stated that the purpose of the statutory provisions, which authorize awards for penalties and attorney's fees in certain worker's compensation cases, is to require the employer to pay timely the benefits owed the employee and to avoid the necessity of the employee retaining an attorney to file suit. See LSA-R.S. 23:1201 and 1201.2.
In the present case, it is clear that defendant's refusal to pay compensation was not based on lack of notice. Plaintiff testified that he contacted McDonald's job supervisor, Hope, reported his injuries immediately after the accident, and asked to be placed on worker's compensation. Plaintiff also made a written demand requesting compensation benefits. Plaintiff's counsel testified that he sent written demands to Hope relative to plaintiff's claim on three different occasions. Medical reports were also forwarded to Hope and McDonald. Hope's testimony verified that plaintiff asked to be placed on worker's compensation and that Hope had received the letters from plaintiff's counsel. Hope testified that he took no action because he did not believe plaintiff was hurt. Hope further testified that he sent Dr. Genovese's note and the letters from plaintiff's counsel to McDonald. Neither Hope nor McDonald investigated plaintiff's claim before plaintiff instituted suit.
An employer or his insurer has a duty to investigate a worker's claim of disability. Failure to investigate after notice and arbitrarily refusing to pay worker's compensation may properly activate *332 statutory penalties and attorney's fees. Young v. Western Electric Co., Inc., supra. The trial court determined that McDonald and Chubb arbitrarily refused to make payment without investigating the matter any further. The court stated in its written opinion, "this was a classic case of an arbitrary and capricious action by an employer who refused to do even a minimum investigation into the complaints of its employees." We do not find the trial court's determination to be manifestly erroneous.
Accordingly, the trial court properly awarded plaintiff statutory penalties and attorney's fees.

ASSIGNMENT OF ERROR NO. 3

(Penalty on Medical Expenses)
McDonald and Chubb contend that the trial court erred in awarding a 12% penalty on medical expenses.
LSA-R.S. 23:1201 B and E, in effect at the time of the accident, provide, in pertinent part:
B. The first installment of compensation payable for temporary total disability, permanent total disability, or death shall become due on the fourteenth day after the employer or insurer has knowledge of the injury or death, on which date all such compensation then due shall be paid.
E. If any installment of compensation payable without an order is not paid within the time period provided in Subsections (B), (C), or (D) of this Section, there shall be added to such unpaid installment a penalty of an amount equal to twelve percent thereof, which shall be paid at the same time as, and in addition to, such installment of compensation, unless such nonpayment results from conditions over which the employer or insurer had no control. Whenever the employee's right to such benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply. The twelve percent additional payment shall be assessed against either the employer or the insurer, depending upon who was at fault in causing the delay.
The court in Chelette v. American Guarantee and Liability Insurance, Inc., 480 So.2d 363 (La.App. 3rd Cir.1985), stated:
Previous to Acts 1983, 1st Ex.Sess., No. 1, § 1, the standard employed to determine whether a claimant was entitled to statutory penalties was whether the failure to pay could be said to be arbitrary, capricious or without probable cause. That standard was changed with the 1983 revisions. Under the new workers' compensation provisions, the employer and/or insurer escapes the payment of statutory penalties if nonpayment results from conditions over which the employer or insurer had no control, or if the latter can "reasonably controvert" the employee's right to medical and compensation benefits. If non-payment did not result from conditions over which the employer or insurer had no control or if the employer or insurer is not able to reasonably controvert the employee's right to such benefits, then penalties attach if payment of said benefits does not take place by the fourteenth day after the employer or his insurer had knowledge of the compensable injury. [480 So.2d at 366]
Further, LSA-R.S. 23:1201 B and E require that the employer or insurer have knowledge of the injury and the loss of income before the fourteen-day time period begins to run. Theriot v. American Employees Insurance Company, 482 So.2d 648 (La.App. 3rd Cir.1986).
In Chelette v. American Guarantee and Liability Insurance, Inc., supra, the court formulated the following test to determine whether penalties of 12% should be assessed to the employer or insurer for nonpayment of medical benefits:
[G]iven the facts, medical and otherwise, known to the employer or his insurer, did the employer or insurer have a reasonable basis to believe that medical expenses and compensation benefits were not due the employee. Stated another way, did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. This test requires a close *333 analysis of each workers' compensation case. [480 So.2d at 367]
In the instant case, McDonald and Chubb do not contend that the nonpayment of medical benefits resulted from conditions over which they had no control. The record substantiates that the accident occurred on October 13, 1987, and that McDonald and Chubb were furnished copies of plaintiff's medical bills as early as October 23, 1987. Plaintiff's requests for medical benefits were not honored by defendants because they questioned the validity of plaintiff's claim.
Although plaintiff's supervisor testified that the first time he learned of plaintiff's back injury was at trial, the record reflects that both the employer and the insurer received notification of plaintiff's injuries along with medical bills as early as October 23, 1987. The facts show that the insurer did not have a reasonable basis to believe that medical expenses and compensation were not due. Plaintiff indicated in his request for worker's compensation benefits that his injury was job-related. Medical bills and letters sent to the employer and insurer from plaintiff's counsel also indicated that the injury was job-related. A cursory investigation by the defendants would have revealed that plaintiff was being treated for a job-related injury. The evidence showed that McDonald and Chubb did not have a reasonable basis to believe that medical expenses and compensation benefits were not due the employee. Therefore, we cannot say that the trial court erred in assessing a twelve percent penalty on the unpaid medical expenses.

ASSIGNMENTS OF ERROR NOS. 4 & 5

(Interest)
In these assignments of error, McDonald and Chubb contend that the trial court erred in awarding interest on worker's compensation benefits and on attorney's fees from the date of judicial demand.
A. Legal Interest on Worker's Compensation Installments
Legal interest assessed on worker's compensation installment benefits accrue from the date that each installment becomes due. Each weekly benefit is to bear legal interest from its respective due date until it is paid. Bordelon v. Vulcan Materials Company, 472 So.2d 5 (La.1985); Shatoska v. International Grain Transfer, Inc., 430 So.2d 1255 (La.App. 1st Cir. 1983); Crockett v. St. Paul Insurance Company, 413 So.2d 949 (La.App. 1st Cir. 1982), writ denied, 420 So.2d 447 (La.1982).
In the instant case, the trial judge awarded interest on the worker's compensation benefits from the date of judicial demand. Clearly, this was error.
Although plaintiff prayed for legal interest on all past due compensation from the date due until paid, he did not appeal the trial court's award of interest from the date of judicial demand. Therefore, the trial court's ruling will not be disturbed relative to those worker's compensation installments due prior to judicial demand. Legal interest on those compensation benefit payments due after judicial demand, however, will bear legal interest from the date that each installment became due. See Bordelon v. Vulcan Materials Company, supra; Shatoska v. International Grain Transfer, Inc., supra.
B. Legal Interest on Attorney's Fees
Interest awarded on attorney's fees accrues from the date of the judgment. Stevenson v. Bolton Company, Inc., 484 So.2d 678 (La.App. 1st Cir.1985), writ denied, 489 So.2d 247 (La.1986).
In the instant case, the trial court awarded plaintiff interest on attorney's fees from the date of judicial demand. This award was error. Accordingly, the $5,000.00 award of attorney's fees will bear interest from the date of the trial court judgment until paid.

ANSWER TO APPEAL

(Attorney's Fees)
The trial judge awarded plaintiff attorney's fees of $5,000.00. Plaintiff answered the appeal, requesting an increase *334 in attorney's fees from $5,000.00 to $7,000.00 due to the additional work required to protect his judgment on appeal. We believe an increase in the award is warranted to compensate plaintiff for the additional expenses made necessary by this appeal and an increase from $5,000.00 to $7,000.00 is reasonable. Young v. Western Electric Co., Inc., supra.

DECREE
The judgment of the trial court is amended as follows: On those past due installments due prior to the date of judicial demand, legal interest will accrue from the date of judicial demand until paid. On those past due installments due after judicial demand, interest will accrue from the due date of each installment until paid. That portion of the trial court's judgment awarding attorney's fees of $5,000.00 is affirmed, but interest on this portion of the award is amended to bear interest from the date of the trial court judgment. Further, the $5,000.00 award of attorney's fees is increased to $7,000.00, with legal interest on the additional $2,000.00 from the date of the judgment of this court. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are to be assessed to McDonald and Chubb.
AFFIRMED IN PART; AMENDED IN PART; AND, AS AMENDED, AFFIRMED.