560 So.2d 902 (1990)
Sylvester WATSON
v.
AMITE MILLING CO., INC.
No. CA 89 0302.
Court of Appeal of Louisiana, First Circuit.
April 10, 1990.
Rehearing Denied June 4, 1990.
*903 William Mustian, III, Metairie, for plaintiff-appellant.
Jeffrey C. Napolitano, New Orleans, for defendant-appellee.
Before LOTTINGER, CRAIN and LeBLANC, JJ.
LOTTINGER, Judge.
This is an appeal by a workmen's compensation claimant from a judgment awarding him permanent, total disability payments, both past due and prospectively throughout the period of his disability, subject to an offset for Social Security benefits.
The plaintiff, Sylvester Watson, appeals and lists three assignments of error:
1. The district court erred in failing to reserve petitioner's right to receive supplemental earnings benefits in any week in which it is the more favorable remedy than permanent total disability benefits.
2. The district court erred in applying the Social Security offset retroactively to past due compensation benefits which accrued before the defendant made judicial demand for the offset.
3. The district court erred in failing to award penalties and attorney's fees.
The defendant, Amite Milling Company, Inc. (Amite), has answered the appeal contending that Mr. Watson is capable of returning to work and that consequently no workmen's compensation benefits were due after June 13, 1985, the date Amite terminated temporary total benefits on the advice of the Office of Worker's Compensation Administration (OWCA). Amite seeks reimbursement for all amounts paid after this date. Alternatively, Amite contends that if workmen's compensation benefits are due Mr. Watson, they are only due from March 16, 1987. This is the date on which the Fifth Circuit Court of Appeal held that by failing to reject the recommendation of the OWCA, Mr. Watson accepted it by virtue of the "conclusive presumption" of La.R.S. 23:1310.1(A). Watson v. *904 Amite Milling Co., Inc., 504 So.2d 1149 (La.App. 5th Cir. 1987).

FACTS
Mr. Watson began working for Amite as a truck driver in 1952. He sustained the injuries which ultimately lead to this lawsuit when he was involved in an accident while making deliveries near New Iberia, Louisiana, in a company truck on October 20, 1983. As a result of that accident he sustained a lower back injury and a blow to the head which produced a cut on his right temple and possibly aggravated an existing work related injury to his right eye. After spending one or two days in a local hospital Mr. Watson was released and placed under the care of his family doctor in Amite, Louisiana. Amite subsequently began paying temporary total disability benefits to Mr. Watson.
Mr. Watson resumed working at Amite in January of 1984, but after a few weeks he was unable to continue due to pain in his lower back. Amite then resumed the temporary total disability benefits.
In April of 1985, Amite hired a private investigator who began surveillance of Mr. Watson. This resulted in a report that Mr. Watson was selling vegetables and a photograph of him with a 50 pound sack of potatoes on his shoulder. Amite presented this evidence to the OWCA and that office issued a recommendation on July 16, 1985, that temporary total benefits be terminated as of June 13, 1985. Mr. Watson did not timely reject this recommendation, and Amite terminated his benefits as of June 13, 1985.
Amite continued paying Mr. Watson's medical bills until July 30, 1986. At that time, Amite wrote a letter to Dr. Hiromu Shoji, the physician who was actively treating Mr. Watson, and indicated that it would no longer pay Mr. Watson's medical bills. As a result, even though the medical evidence was clear that Mr. Watson was at least partially disabled and in need of further treatment, Mr. Watson did not receive any medical treatment from July 30, 1986, until August 21, 1987, when Amite re-authorized medical payments.
Mr. Watson initially filed suit in the 24th Judicial District Court, Jefferson Parish, Louisiana, on December 26, 1985. That suit was dismissed with prejudice on exceptions of no cause of action and res judicata. On appeal, the Fifth Circuit held that Mr. Watson was conclusively presumed to have accepted the OWCA's recommendation pursuant to La.R.S. 23:1310.1, and, therefore, his suit was untimely in that he had not sought modification of the OWCA recommendation. The Fifth Circuit amended the judgment to make it a dismissal without prejudice based on prematurity, and otherwise set aside the judgment of the trial court. Watson, 504 So.2d 1149, 1153.
On June 10, 1986, while his appeal to the Fifth Circuit was pending, Mr. Watson sought modification of the OWCA recommendation. Modification was denied and the present suit was filed in the Twenty-First Judicial District Court, Parish of Tangipahoa on December 1, 1986. The trial court held that Mr. Watson was permanently and totally disabled and awarded benefits for his disability against Amite in the amount of $167.66 per week from June 13, 1985, throughout the period of his disability subject to an offset for social security benefits. The trial court declined to award penalties and attorney's fees. Mr. Watson appealed, and Amite answered the appeal.

PLAINTIFF'S FIRST ASSIGNMENT OF ERROR
The plaintiff complains in his first assignment of error that he should be allowed to receive supplemental earnings benefits (SEB) in any week in which it is more favorable than permanent total disability benefits. The plaintiff reasons that if he were receiving SEB payments instead of permanent total disability payments, no social security offset pursuant to La.R.S. 23:1225(A) could be deducted from his compensation payments and he would receive more total benefits.[1]
*905 The plaintiff relies on Jacks v. Banister Pipelines America, 418 So.2d 524 (La. 1982), for the proposition that he should be allowed to receive SEB payments in the weeks when it is more favorable, i.e. after he attains the age of 65.
Even if SEB payments are more favorable to the plaintiff, and still available to him once he reaches age 65 and is receiving social security benefits[2], questions which we do not decide, we do not think that SEB payments are available to plaintiff absent a reversal of the trial court's judgment of permanent total disability.
In Jacks, the case relied upon by plaintiff, the question over which benefit was payable was between a scheduled benefit under § 1221(4), i.e., for the loss of an eye, and partial disability under § 1221(3), which is now called SEB. Both of these types of benefits presupposes that the claimant can still do some work. The partial disability benefits of § 1221(3), or SEB as it is now called, provides for payments based on the difference between what the claimant can now earn and his pre-injury earnings. The schedule benefits of § 1221(4) provides a convenient precalculated time period during which benefits are payable for the loss of use of particular body parts, whether or not the claimant returns to work. The Louisiana Supreme Court held that these were parallel remedies and the claimant should have the benefit of whichever one was more favorable in any given week. Jacks, 418 So.2d at 529.
In the instant case, the question is between permanent total disability payments and SEB payments. These are not parallel remedies as was the case in Jacks. This is made clear by the language of the statute itself which provides that in order to recover benefits under the permanent total disability section, the claimant must be totally physically unable to engage in any type of employment. La.R.S. 23:1221(2). SEB payments, on the other hand, presuppose that the claimant can work. Not only is the section on SEB payments phrased in terms which infer an ability to work, i.e. "... is able to earn ...," but calculations in decisions awarding SEB payments are made on the basis of what the claimant is capable of earning. See, Clark v. Atlantic Painting Company, 521 So.2d 505 (La. App. 4th Cir.1988); Beckham v. Commercial Union Insurance Company, 517 So.2d 886 (La.App. 3rd Cir.1987).
Therefore, since permanent total disability and SEB payments are not parallel remedies as was the case in Jacks, the holding therein is not applicable here. If the plaintiff wishes to switch from permanent total disability payments to SEB payments, he may petition the trial court pursuant to La.R.S. 23:1331, and upon proving his entitlement to them they will be awarded.

PLAINTIFF'S SECOND ASSIGNMENT OF ERROR
The plaintiff, in his second assignment of error, contends that the trial court erred in applying the social security offset retroactively to past due compensation benefits which accrued prior to the defendant's judicial demand for the offset.
We agree. The jurisprudence is clear that workmen's compensation benefits can only be reduced pursuant to § 1225 prospectively from the date the employer makes a judicial demand for the offset. Jackson v. Georgia Casualty and Surety Company, 513 So.2d 530 (La.App. 2d Cir.), writ denied, 515 So.2d 448 (La.1987); Sanchez v. Viccinelli Sheet Metal and Roofing Company, Inc., 473 So.2d 335 (La.App. 1st Cir.), writ denied, 477 So.2d 1124 (La. 1985); Jackson v. Maloney Trucking & Storage, Inc., 442 So.2d 849 (La.App. 4th Cir.1983), writ denied, 445 So.2d 441 (La. 1984); *906 Lofton v. Louisiana Pacific Corporation, 423 So.2d 1255 (La.App. 3rd Cir. 1982).
In this case the employer made judicial demand for the offset in its answer, which was filed on June 18, 1987. Therefore the defendant is only entitled to the § 1225 offset prospectively from June 18, 1987.

PLAINTIFF'S THIRD ASSIGNMENT OF ERROR
The plaintiff next alleges that the trial court erred in failing to award penalties and attorney's fees. The plaintiff's basis for claiming penalties and attorney's fees is that the defendant terminated his benefits on June 13, 1985, in the absence of any supporting medical evidence; and that the defendant rescinded its medical authorization to plaintiff's treating physician on July 30, 1986, and did not reinstate it for over one year.
Since the plaintiff's injury occurred on October 20, 1983, the 1983 revisions to the workmen's compensation statutes as they existed on the date of the plaintiff's injury apply. Under these revisions there are separate standards for determining whether penalties and/or attorney's fees shall be awarded.
The assessment of penalties is governed by La.R.S. 23:1201(E) which provided as of October 20, 1983:
"If any installment of compensation payable without an order is not paid within the time period provided in Subsections (B), (C), or (D) of this Section, there shall be added to such unpaid installment a penalty of an amount equal to twelve percent thereof, which shall be paid at the same time as, and in addition to, such installment of compensation, unless such nonpayment results from conditions over which the employer or insurer had no control. Whenever the employee's right to such benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply. The twelve percent additional payment shall be assessed against either the employer or the insurer, depending upon who was at fault in causing the delay. No worker's compensation insurance policy shall provide that this sum shall be paid by the insurer if the director or the court determines that the twelve percent additional payment is to be made by the employer rather than the insurer. Any additional installment of compensation paid by the employer or insurer pursuant to this Section shall be paid directly to the employee."
Defendant does not contend that benefits were terminated due to conditions over which it had no control. Therefore, the only inquiry with respect to penalties is whether Mr. Watson's right to benefits has been reasonably controverted by the defendant.
In Chelette v. American Guarantee and Liability Insurance, Inc., 480 So.2d 363, 367 (La.App. 3rd Cir.1985), and Theriot v. American Employees Insurance Company, 482 So.2d 648, 650 (La.App. 3rd Cir. 1986), our brethren in the Third Circuit have formulated the following test, which we adopted in Hall v. McDonald Insulation, 537 So.2d 328 (La.App. 1st Cir.1988), to determine whether the employee's right to benefits has been reasonably controverted:
"[G]iven the facts, medical and otherwise, known to the employer or his insurer, did the employer or insurer have a reasonable basis to believe that medical expenses and compensation benefits were not due the employee. Stated another way, did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. This test requires a close analysis of each workers' compensation case." Chelette, 480 So.2d at 367.
The evidence indicates that the defendant did not have sufficient factual and medical information to reasonably believe that compensation and medical expenses were not due. The only pre-termination of benefits medical opinion in the record is that of Dr. D.A. Swift, the defendant's independent medical examiner, dated January 10, 1985. *907 Dr. Swift concludes that Mr. Watson will never be able to return to his former occupation and is only capable of light duty work. As a whole, the medical evidence is uncontradicted and indicates that at most Mr. Watson is capable of light, sedentary work, and should not lift more than five to ten pounds.
Mr. Watson was actively undergoing medical treatment at the time that the defendant terminated his benefits. An employer is required to make a reasonable effort to ascertain an employee's exact medical condition before terminating benefits. If benefits are terminated in spite of uncontradicted medical testimony evincing disability, then penalties and attorney's fees may be assessed. Duplechain v. Gulf States Utility Co., 468 So.2d 1386 (La.App. 3rd Cir. 1985); Salvador v. Slidell Industries, Inc., 415 So.2d 511 (La.App. 1st Cir. 1982). The defendant does not seriously contend that Mr. Watson's injuries were unrelated to his employment. Therefore, based on the medical evidence of Mr. Watson's condition, it was unreasonable for the defendant to terminate his benefits.
The defendant asserts that it was reasonable to terminate benefits and medical authorization based on the evidence that Mr. Watson was selling vegetables and the recommendation of the OWCA to so terminate them. This evidence consisted primarily of the report of a private investigator and two photographs of Mr. Watson, one of which shows him with a sack of potatoes on his shoulder. The private investigator observed Mr. Watson loading and unloading vegetables onto and from his pickup truck several times during a six week period in April and May of 1985, and took the above described two photographs on the last such day.
In Orgeron v. Tri-State Road Boring, Inc., 434 So.2d 65 (La.1983), the Supreme Court, in holding a defendant liable for penalties and attorney's fees because it had terminated benefits based solely on a surveillance video tape of the plaintiff allegedly performing physical labor, stated:
"In this case, USF & G had no reasonable basis for terminating benefits. The termination was precipitated by videotapes or (sic) Orgeron allegedly performing physical labor at various construction sites. The tapes had been made pursuant to a continuous surveillance of the plaintiff commissioned by the defendants. As noted by the court of appeal in its consideration of this case, evidence in the form of moving pictures or videotapes must be approached with great caution because they show only intervals of the activities of the subject, they do not show rest periods, and do not reflect whether the subject is suffering pain during or after the activity....
"Here, the defendants had been receiving regular reports from Dr. Fleming on the plaintiff's condition, and Dr. Fleming had advised the defendants that he had assigned a 50% disability rating. The defendants sent Orgeron to an examining physician of their own choosing, and the physician assessed Orgeron's disability rating at 21%. Ignoring the medical evidence and relying solely on `information that Mr. Orgeron had been working,' the defendants terminated benefits. It is incumbent upon insurers to make a reasonable effort to ascertain an employee's exact medical condition at the time benefits are terminated. Salvador v. Slidell Industries, Inc. 415 So.2d 511 (La.App. 1st Cir.1982). Termination of benefits on the basis of inconclusive videotape evidence in total disregard of competent medical evidence which established conclusively that Orgeron had at least a partial permanent disability rating of between 21% and 50% was arbitrary and capricious and renders the defendants liable for penalties and attorney's fees." (434 So.2d at 69).
Here, as in Orgeron, the defendant attempts to rely on inconclusive evidence of the plaintiff's ability to work while totally disregarding competent medical evidence which establishes at the very least that the plaintiff has a partial permanent disability. It is well settled that even if an employee is only partially disabled the employer is not justified in terminating all compensation; and if he does so, penalties and attorney's *908 fees may be assessed. Condall v. Avondale Shipyards, Inc., 436 So.2d 595 (La. App. 4th Cir. 1983).
As for the OWCA's recommendation, it is well settled that it should not be given preclusive effect; it does not give rise to any presumption as to the correctness of facts or law therein, and is advisory only. La.R.S. 23:1310.1 A[3]; Turner v. Maryland Casualty Co., 518 So.2d 1011 (La. 1988); Fontenot v. Citgo Petroleum Corporation, 529 So.2d 69 (La.App. 3rd Cir. 1988); Theriot; Chelette. Defendant's reliance on this recommendation will not shield it from liability where there is clear, uncontradicted medical evidence to the contrary. In light of the foregoing, it was manifest error for the trial court not to award statutory penalties and that judgment is hereby modified to include them.

ATTORNEY'S FEES
The plaintiff's claim for attorney's fees is governed by La.R.S. 23:1201.2, which provides in pertinent part:
"Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney's fees for the prosecution and collection of such claims."
It is clear that the arbitrary and capricious standard of the pre-1983 revision still applies with regards to attorney's fees. Thus, defendant only owes attorney's fees if it was arbitrary and capricious in terminating the plaintiff's benefits and payments for medical treatment.
In this case the medical evidence was clear and uncontradicted that the plaintiff was at least partially disabled. Where an employee is even partially disabled, the employer is not justified in terminating benefits and medical payments absent a genuine dispute as to causation. Condall; Chelette. Here there was no such dispute.
The only basis for the defendant's termination of plaintiff's benefits was the report of the private investigator and the OWCA's recommendation. Neither of these will shield the defendant from the imposition of attorney's fees in the light of uncontradicted medical evidence to the contrary. Orgeron; Fontenot.
Therefore, the trial court's denial of attorney's fees was clearly erroneous and we hereby modify that judgment to include reasonable attorney's fees. After reviewing the work performed by plaintiff's counsel in this case; which included several depositions, a successful writ application to this court during discovery, a full blown trial, and the instant appeal, along with similar cases where attorneys' fees were awarded, we conclude that $5,000.00 is a sufficient award for attorneys' fees.

DEFENDANT'S ANSWER TO THE APPEAL
In its answer to the appeal, Amite contends that because Mr. Watson sold a few vegetables, no compensation is owed beyond June 13, 1985. This contention has no merit. We have already held that it was improper for Amite to terminate benefits based on this evidence; and the medical evidence supports the trial court's finding of permanent total disability. In the absence of manifest error we will not disturb this finding.
Alternatively, Amite contends that because Mr. Watson is conclusively presumed to have accepted the initial recommendation of the OWCA, no workers compensation benefits are owed for the period prior to March 16, 1987, the date of the Fifth Circuit opinion holding that he was conclusively presumed to have accepted the recommendation and dismissing his first suit.
*909 Amite is partially correct. Because Mr. Watson did not reject the initial recommendation of the OWCA and is conclusively presumed to have accepted it, he has no right to judicial review of that recommendation. Suttle v. Roadway Express, Inc., 511 So.2d 1262 (La.App. 2nd Cir. 1987); Bailey v. Pacific Marine Insurance Co., 509 So.2d 508, 512 (La.App. 3rd Cir.), writ denied, 510 So.2d 377 (1987), (Knoll, J., concurring). However, Mr. Watson timely petitioned the OWCA for a modification of the initial recommendation pursuant to La.R.S. 23:1331(C) on June 10, 1986. It is this modified, or second recommendation which Mr. Watson rejected and thereafter filed this suit to obtain judicial review. Therefore, the award of past due benefits can only be retroactive back to June 10, 1986.

CONCLUSION
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part, and amended; and it is hereby ORDERED, ADJUDGED and DECREED that the defendant owes past due workmen's compensation benefits to Mr. Watson only from June 10, 1986, forward; that the defendant is only entitled to the § 1225 social security offset prospectively from June 18, 1987, the date of judicial demand for it; that a penalty of 12% of the total amount due is owed by the defendant to the plaintiff; and attorney's fees in the amount of $5,000.00 are assessed against the defendant. This, all in accordance with the foregoing opinion, plus interest from the date of judicial demand, is awarded to the plaintiff against the defendant. The costs of this appeal are assessed against defendant.
AFFIRMED IN PART, REVERSED IN PART, AND AMENDED.
NOTES
[1] Normally, if no social security offset is taken from plaintiff's worker's compensation benefits, then a worker's compensation offset would be deducted from his social security payments pursuant to 42 U.S.C. 424a, and the net to the plaintiff would be the same. However, once the plaintiff reaches age 65, his social security payments could no longer be offset by his worker's compensation benefits pursuant to § 424a, and therefore the net to plaintiff would appear to be greater if he were receiving SEB payments after reaching the age of 65.
[2] La.R.S. 23:1221(3)(d)(iii) provides that SEB payments terminate when the employee retires or begins to receive social security retirement benefits, but in no event shall the period during which they may be payable be less than one hundred four weeks.
[3] La.R.S. 23:1310.1(A) provided in pertinent part as of July 16, 1985, the date of the OWCA's recommendation in this case, that: "the office shall issue its recommendation for resolution.... Such recommendation shall be advisory only and shall not be admissible into evidence in any subsequent legal proceeding."