589 So.2d 47 (1991)
Wilson ANTHONY
v.
GEORGIA PACIFIC CORPORATION.
No. 90 CA 1200.
Court of Appeal of Louisiana, First Circuit.
October 18, 1991.
Rehearing Denied January 3, 1992.
*48 A. Zach Butterworth, St. Francisville, for plaintiff.
Brian F. Blackwell, Baton Rouge, for defendant/appellant.
Before LOTTINGER, EDWARDS and GONZALES, JJ.
LOTTINGER, Judge.
This is an appeal by defendant, Georgia-Pacific Corporation, of a final judgment in favor of plaintiff, Wilson Anthony, condemning it to pay permanent and total disability benefits, penalties, and attorney's fees under the worker's compensation statutes.

FACTS
The plaintiff, Wilson Anthony, was injured on February 18, 1986, as he tried to control a 90-pound jackhammer that had slipped during use. The injury was eventually diagnosed as a slightly bulging disc at L4-5. Anthony has been in continual pain since the accident, although it varies in intensity. He returned to work during 1986 and quit in November, 1987.
The defendant, Georgia-Pacific Corporation, paid Anthony $254.00 per week from the time he could no longer work, November 6, 1987, until July 2, 1989, when all benefits were stopped. On December 1, 1989, Georgia-Pacific began paying $217.62 per week as supplemental earnings benefits, which they continue to pay. Additionally, Georgia-Pacific issued a check to cover the period during which such benefits were not paid: between July 2 and December 1, 1989.
*49 Georgia-Pacific urges three assignments of error:
1. The trial court erred in finding plaintiff to be totally and permanently disabled.
2. The trial court erred in failing to find plaintiff entitled only to Supplemental Earnings Benefits.
3. The trial court erred in awarding statutory penalties and attorney's fees.

I
Whether Wilson Anthony is totally and permanently disabled requires an application of La.R.S. 23:1221(2)(c); this section requires a claimant to prove by clear and convincing evidence that he is totally and permanently disabled. The trial court found that Anthony was so disabled, but gave few specific reasons for this determination in the signed judgment.
Georgia-Pacific asserts that the trial court erroneously relied on the legislatively-overruled odd lot doctrine because the judgment cites Anthony's "physical limitations due to his back injury coupled with his lack of education and low intellectual capacity." This court is not bound by the appellant's characterization of the trial judge's reasoning, but is constrained to examine his ruling for manifest error, in light of section 1221(2)(c)'s language, since the finding of total and permanent disability is one of fact. Durbin v. State Farm Fire and Casualty Company, 558 So.2d 1257, 1260 (La.App. 1st Cir.1990).
One fact elicited in testimony is that the claimant, Anthony, has an I.Q. in the borderline retarded range of 69. This was established by Anthony's rehabilitation expert, Mr. Curtis Charrier, who also testified, in examining the jobs Georgia-Pacific asserts were available for Anthony, that Anthony's lack of mental capacity was a bar to employment almost equal to his lifting restrictions. The testimony makes it apparent that Anthony's mental limitations are the product of a lack of education and a lack of ability to learn. This testimony was unrebutted by Georgia-Pacific.
While it is true that a lack of education alone is insufficient to make out a case for total and permanent disability, Anderson v. Aetna Casualty & Surety Company, 505 So.2d 199, 205 (La.App. 3d Cir.), writ denied, 511 So.2d 1152 (La.1987), a lack of education coupled with a lack of ability to be educated, should not serve as a bar to a determination of total and permanent disability. cf. Ducharme v. Garland Belongia, 544 So.2d 590, 593 (La.App. 1st Cir.), writ not considered, 548 So.2d 315 (La. 1989). We cannot find that the trial judge was clearly wrong in fixing Anthony's disability status at total and permanent, when Anthony's lack of mental capacity is coupled with his lifting restrictions.
Georgia-Pacific further argues that because Anthony returned to work following his accident for some time, eventually quitting on November 6, 1987, that by the language of section 1221(2)(c), he is barred from an assessment of total and permanent disability. We find that this work is not the "any work" of the statute for the simple reason that to so construe an effort to return to work, or to determine whether one is able to return to or continue to work is counterproductive. Anthony's continued work was no more than a process of discovering that he was no longer capable of working, and this was confirmed, ultimately, when he was unable to continue, due to his pain.
In this case, we find Captain v. Sonnier Timber Co., 503 So.2d 689, 691 (La.App. 3d Cir.1987) inapposite as that case involved two unrelated jobs, and the sheriff's deputy position could in no way be construed as a process of discovering that one was no longer fit for one's prior employment as a pulpwood hauler.
Thus, we find no error in the trial judge's finding of total and permanent disability, given Anthony's physical injury and lack of ability to be trained for other work.
Our conclusion above pretermits any need to discuss Georgia-Pacific's second assignment of error.

*50 II
As to Georgia-Pacific's third assignment of error, the assessment of penalties for non-payment of benefits is governed by La.R.S. 23:1201(E). Georgia-Pacific relies on the "reasonably controverted" language of this section in arguing that the trial court abused its discretion in awarding penalties. Georgia-Pacific argues in its original and reply briefs that because it relied upon the competent medical reports of Drs. Jackson and Ioppolo, as well as its rehabilitation firm's (Conservco) report, it reasonably controverted Anthony's right to benefits other than supplemental earnings benefits.
Additionally, Mr. Steven P. Yount, Georgia-Pacific's Manager of the Southern Region Worker's Compensation district,[1] testified that Anthony's benefits were terminated when the adjuster, Michele O'Barr, felt that Anthony had not lived up to an obligation to apply for the jobs they indicated were available for him. It is apparent that Georgia-Pacific assumed Anthony was a malingerer, and its counsel argues that it "rightfully" so assumed when Anthony failed to apply for the jobs Conservco listed as available.
However, letters in the Conservco file between Georgia-Pacific and its counsel paint a different picture of the reason and method underlying a decision whether to pay benefits.[2] In one such letter, dated December 17, 1987, Mr. Vance A. Gibbs indicates to Ms. Michele O'Barr that Georgia-Pacific should obtain a medical report from Dr. Jackson to justify, after the fact, a resumption of benefits that were due the previous month. It is apparent that Georgia-Pacific acted without a medical report during the period immediately following Anthony's final day on the job, November 6, 1987, and had no qualms about doing so until receipt of a demand letter from Anthony's counsel.
Another letter, dated March 1, 1988, from Gibbs to O'Barr indicates a belief that Anthony was a malingerer long before he "failed" to live up to obligations placed on him by Georgia-Pacific in July of 1989. There appears to have been an agreement to try to push Anthony off of compensation, pursuant to a yet-to-be-generated report by Conservco, or by pushing him to make a decision as to his future. In either instance, the goal of limiting liability for benefits was clear; all that was lacking was a basis to do so.
Given these letters, we cannot find that the trial judge abused his discretion, in rejecting Georgia-Pacific's "reliance" on any reports in its possession, and, in awarding penalties against Georgia-Pacific.
Further, the defendant knew, by medical information in its possession, that Anthony was at least partially disabled and has never denied this. The courts have repeatedly held that there is no justification for terminating benefits where the employer has such knowledge and information. Watson v. Amite Milling Co., Inc., 560 So.2d 902, 908 (La.App. 1st Cir.), writ denied, 567 So.2d 614 (La.1990), citing Orgeron v. Tri-State Road Boring, Inc., 434 So.2d 65 (La. 1983); Condall v. Avondale Shipyards, Inc., 436 So.2d 595 (La.App. 4th Cir.1983); and Chelette v. American Guarantee and Liability Insurance, Inc., 480 So.2d 363 (La.App. 3rd Cir.1985). Accordingly, we find no abuse of discretion in the trial court's assessment of statutory penalties.
An award of attorney's fees is governed by La.R.S. 23:1201.2 and its arbitrary and capricious standard. Watson, 560 So.2d at 908. As in the above cited cases, an award of attorney's fees is proper where, as here, there is no genuine dispute as to causation, and the employer terminates benefits despite having knowledge that the claimant is at least partially disabled. Again, we find no abuse of discretion *51 in the trial court's award of attorney's fees.
Therefore, for the above and foregoing reasons the judgment of the trial court is affirmed at defendant-appellant's costs.
AFFIRMED.
NOTES
[1] Georgia-Pacific is a self-insured worker's compensation provider.
[2] We note that any attorney-client privilege has been waived here where these letters are contained in a file entered into evidence in globo; Mr. Blackwell was notified, by letter dated February 1, 1990 from Conservco's records custodian, that the file was being subpoenaed and that it contained possibly privileged information.